[Cite as *Witt v. Walker*, 2013-Ohio-714.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## CLARK COUNTY

JASON R. WITT

     Plaintiff-Appellant

v.

PAULA WALKER

     Defendant-Appellee


Appellate Case No.   2012-CA-58

Trial Court Case No. 2011-JUV-0261

(Civil Appeal from Common Pleas
 Court, Juvenile Division)

. . . . . . . . . . .

# O P I N I O N

Rendered on the 1st day of March, 2013.

. . . . . . . . . . .

ADRIENNE D. BROOKS, Atty. Reg. #0078152, 36 N. Detroit Street, Suite 102, Xenia, Ohio 45385
    Attorney for Plaintiff-Appellant

LAURA L. KENDELL, Atty. Reg. #0072490, 262 James E. Bohanan Memorial Drive, Vandalia, Ohio 45377
    Attorney for Defendant-Appellee

. . . . . . . . . . . . .

WELBAUM, J.

{¶ 1}    Plaintiff-appellant, Jason Witt, appeals from a judgment of the Clark County Common Pleas Court, Domestic Relations Division, Juvenile Section, which granted a motion to dismiss the complaint for lack of jurisdiction and improper venue.  For the reasons that follow, the judgment of the trial court will be reversed and this cause will be remanded for further proceedings.

## I.   Facts and Course of Proceedings

{¶ 2}    In May 2011, Jason Witt filed a complaint for legal custody, seeking an order granting him legal custody of C.W. and H.W., who were ten and six years of age at the time. Jason alleged that he was the children's natural father, and that they spent the majority of their time with him.[1]  The natural mother, Paula Walker, filed a complaint and counterclaim, denying that the parties had shared parenting.  At a pretrial, the parties stipulated that Jason was the biological father of the children and that genetic testing would be waived.  The trial court filed an entry to that effect in July 2011.

{¶ 3}    When the complaint was filed, Paula lived in Huber Heights, Ohio, which is located in Montgomery County.  The children's babysitter, Angela Harden, also lived in Huber Heights.  Jason lived in New Carlisle, Ohio, which is located in Clark County.  The children attended school in Huber Heights.

{¶ 4}    Paula worked for General Motors (GM), and was transferred to Ft. Wayne, Indiana, in early May 2011.  She asked Angela to keep the children for the rest of the school year

---

[1]For purposes of convenience, we will use the parties' first names.

so that they could finish school. Paula lived in a hotel in Ft. Wayne until June 19, 2011, when she leased a house and moved the children to Ft. Wayne.

{¶ 5} In the July 2011 entry, the trial court also granted Jason visitation with the children on three consecutive weekends every month. The court additionally appointed a guardian ad litem and scheduled a final evidentiary hearing in October 2011. However, neither party appeared for the hearing, and no motion for continuance was filed. Paula was in the process of firing her attorney, and the parties apparently assumed the hearing would be continued. Instead, the trial court dismissed the case without prejudice, for lack of prosecution.

{¶ 6} Two days later, Jason filed another complaint with the same allegations, and the complaint was given the same case number as the original case. This time, the court did not issue interim orders regarding paternity and visitation, but did again appoint a guardian ad litem.[2] After granting a number of continuances, the court scheduled a final evidentiary hearing for mid-June 2012. At that time, however, instead of hearing evidence on custody, the court raised the issue of whether it had jurisdiction, since Paula had moved to Indiana with the children before the second complaint was filed. Accordingly, the court decided to hear testimony only on jurisdictional issues, and allowed the parties to file memoranda on the matter after the hearing.

{¶ 7} Conflicting testimony was adduced at the hearing. Angela, the babysitter, testified that she had baby-sat for the family for about six years, before Paula and the children moved. Angela indicated that the children spent half their time with her (Angela) and that when the children were not with her, they were with Jason and his mother. Angela further stated that she did not know why the children went to school in Huber Heights rather than Clark County, but

---

[2] Visitation did continue, however, on the same basis as had been originally ordered.

this was a matter agreed upon by the parents.

{¶ 8} Jason testified that during the six-year period that Angela babysat, the children were with him fifty percent or more of the time. Most of the time, he was the one who picked the children up from Angela's house. The children sometimes slept at Angela's house on school nights, but most of the time, he dropped the children off at Angela's house before the start of the school day. Jason also indicated that he had been seeing the children three weekends out of the month since they had moved to Ft. Wayne. The younger child, H.W., is in remission from leukemia, and most of the time Paula took her to appointments. Jason stated that this was because Paula would not tell him when the appointments were. He also said that Paula did not tell him about the move until after she and the children were in Indiana.

{¶ 9} Paula testified that she had been transferred to Ft. Wayne by her employer on May 9, 2011. Before the move, the children were primarily with her, but she permitted Jason to take the children most weekends. Jason did not usually pick up the children during the week. The children also spent most holidays with Jason, because he had a large family, and she did not.

{¶ 10} When Paula found out she was being transferred to Ft. Wayne, she asked Angela and her husband if they could keep the children so that they could finish the school year in Huber Heights. Because everything with her job had happened so quickly, she told Angela that she would talk to Jason when she got back from Indiana the following weekend. She obtained housing and moved the girls with her to Ft. Wayne on June 19, 2011, and since that time, their primary residence has been in Ft. Wayne. The children had also attended school in Ft. Wayne after the move.

**{¶ 11}** After the hearing, Jason filed a memorandum and affidavit. He stated in the affidavit that H.W.'s leukemia is in remission and that her attending physician is in Ohio. H.W. last had a visit with the doctor in April 2012, and was scheduled to see the doctor again in August 2012. Jason also stated that both the maternal and paternal grandparents live in Ohio, and until the children moved in June 2011, their care, protection, training, personal relationships, and schooling were all in Ohio.

**{¶ 12}** After the hearing, Paula filed a motion to dismiss the case for lack of jurisdiction or to transfer it to Indiana. In the alternative, Paula asked the court to stay the proceedings until a custody action could be commenced in Indiana.

**{¶ 13}** In August 2012, the trial court filed an entry granting the motion to dismiss for lack of jurisdiction and improper venue. The court concluded that Jason was a person "acting as a parent" under R.C. 3127.15, and that Ohio was the "home state" at the time the complaint was filed. However, the court concluded that Ohio is an inconvenient forum and that Indiana is the appropriate state because the children had been in Indiana for more than a year and had a significant connection with that state. The court, therefore, declined to exercise jurisdiction.

**{¶ 14}** In addition, the court held that even if Ohio were an appropriate forum, the case should have been commenced in Montgomery County, Ohio, since the minor children and their presumed custodial parent, Paula, primarily resided in Montgomery County before the complaint for custody was filed. The court then dismissed the case for lack of jurisdiction and improper venue. Jason appeals from the judgment dismissing the complaint.

## II. Did the Trial Court Err in Declining to Exercise Jurisdiction?

**{¶ 15}** Jason has asserted two assignments of error, and for purposes of convenience, we will consider them together. The first assignment of error states that:

The trial court erred and abused its discretion in declining to exercise jurisdiction over the matter, as the trial court found Ohio to be the home state of the children, [and] that the appellant was serving as a "person acting as a parent" pursuant to R.C. 3127.15.

**{¶ 16}** Jason's second assignment of error states as follows:

The trial court erred and abused its discretion in declaring the State of Ohio an inconvenient forum to determine the issues raised by Mr. Witt, as there was no analysis of R.C. 3127.21 performed by the trial court, and the majority of the information relating to the children's care, protection, training and personal relationships rests in Ohio, and father had established paternity by signing the birth certificates of the minor children, thus forcing the court to consider [sic] one of the parents has a "significant connection to the state other than a "mere presence" pursuant to R.C. 3127.15.

**{¶ 17}** Under these assignments of error, Jason contends that the trial court abused its discretion because Ohio has jurisdictional priority as the home state, and because Jason was deemed a person acting as a parent for purposes of R.C. 3127.15(A)(1). According to Jason, these factors should have been more than enough to require the trial court to accept the matter for further hearing. Jason also contends that he had established paternity by signing the children's birth certificates and the court was, therefore required to consider whether one of the parents had a significant connection to the state, rather than a mere presence. Finally, Jason argues that the

trial court failed to consider the statutory factors in R.C. 3127.21(B).

{¶ 18}    R.C. 3127.15(A) provides, in pertinent part, as follows:

Except as otherwise provided in section 3127.18 of the Revised Code, a court of this state has jurisdiction to make an initial determination in a child custody proceeding only if one of the following applies:

(1) This state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state.

(2) A court of another state does not have jurisdiction under division (A)(1) of this section or a court of the home state of the child has declined to exercise jurisdiction on the basis that this state is the more appropriate forum under section 3127.21 or 3127.22 of the Revised Code, or a similar statute of the other state, and both of the following are the case:

(a) The child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence.

(b) Substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships.

(3) All courts having jurisdiction under division (A)(1) or (2) of this section have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under

section 3127.21 or 3127.22 of the Revised Code or a similar statute enacted by another state.

(4) No court of any other state would have jurisdiction under the criteria specified in division (A)(1), (2), or (3) of this section.

{¶ 19}   There appears to be no dispute that Ohio was the home state of the children under R.C. 3127.15(A)(1).   In addition, there is no dispute regarding the fact that Indiana law contains provisions similar to those in Ohio.

{¶ 20}   The children left Ohio on June 19, 2011, less than four months before Jason filed his complaint in October 2011.   In addition, Jason was a person acting as a parent, or, in fact, was a parent, depending on the effect of the trial court order adjudicating him to be the legal father in the action that was dismissed without prejudice and then "revived" under the same case number.   Jason need only have been a person acting as a parent, however, in order to qualify under R.C. 3127.15(A)(1).

{¶ 21}   Accordingly, Ohio had home state jurisdiction over the child custody action. R.C. 3127.21 provides that a court that has jurisdiction, however, may decline to exercise it, by finding that the court is an inconvenient forum. In this regard, R.C. 3127.21(B) provides that:

Before determining whether it is an inconvenient forum, a court of this state shall consider whether it is appropriate for a court of another state to exercise jurisdiction. For this purpose, the court shall allow the parties to submit information and shall consider all relevant factors, including the following:

(1) Whether domestic violence has occurred and is likely to continue in the future and which state could best protect the parties and the child;

(2) The length of time the child has resided outside this state;

(3) The distance between the court in this state and the court in the state that would assume jurisdiction;

(4) The relative financial circumstances of the parties;

(5) Any agreement of the parties as to which state should assume jurisdiction;

(6) The nature and location of the evidence required to resolve the pending litigation, including the testimony of the child;

(7) The ability of the court of each state to decide the issue expeditiously and the procedures necessary to present the evidence;

(8) The familiarity of the court of each state with the facts and issues in the pending litigation.

**{¶ 22}** The current version of the statute, R.C. 3127.21, was enacted in 2004, and the former statute, R.C. 3109.25, was repealed. The current version differs from the former statute in various respects. For example, R.C. 3109.25(C) based the determination on the interest of the child, whereas the current statute focuses on whether it is appropriate for another state to assume jurisdiction. R.C. 3109.25(C) was also permissive, in that it stated that a court "may" take the listed factors into account. In contrast, R.C. 3127.21(B) is mandatory, because it states that the court "shall" consider all relevant factors, including the listed factors. This is not permissive, and the court must consider the factors listed in the statute.

**{¶ 23}** In a case involving a transfer under R.C. 3127.21(B), we noted that "[a] reviewing court will presume that the trial court considered relevant statutory factors in the

absence of evidence to the contrary." *In re N.A.E.*, 2d Dist. Montgomery No. 21596, 2006-Ohio-5395, ¶ 7, citing *Quint v. Lomakoski*, 167 Ohio App.3d 124, 2006-Ohio-3041, 854 N.E.2d 225, ¶ 12 (2d Dist.).[3]  In *N.A.E.*, we noted that the trial court had referred to the requirement in R.C. 3127.21 of considering the statutory factors, and had then listed more specific factors.  *Id.* We also noted that the trial court had observed that the specific factors provided little guidance, and had discussed its reasoning, which was based on these facts:  the child and its legal guardian had lived in Missouri most of the child's life; the child's  teachers, school, and medical and psychological providers were all in Missouri; and both parents had retained counsel in Missouri. *Id.*  Because the trial court noted that the statutory factors gave little guidance, and had mentioned multiple factors in its decision, we concluded that the trial court did not abuse its discretion by failing to specifically address each listed factor.  *Id.*

{¶ 24}    In *Simon v. Simon*, 9th Dist. Summit No. 25933, 2012-Ohio-3443, the Ninth District Court of Appeals noted the same presumption about a trial court having considered statutory factors.    Nonetheless, the Ninth District concluded that, based on the record, the trial court may not have considered all the relevant factors.  *Id.* at ¶ 8.  Among the matters found relevant were the trial court's failure to mention R.C. 3127.21, and the fact that the court's order exceeded the bounds of the statute.  *Id.* at ¶ 9.  The Ninth District Court of Appeals, therefore, reversed the order transferring the case to Kentucky.  *Id.* at ¶ 10.

{¶ 25}    In the case before us, the record fails to reveal any evidence presented by Paula regarding the factors in R.C. 3127.21(B).  The only evidence in the record is that the children

---

[3] *Quint* involved a decision on modification of parenting time rights under R.C. 3109.051(D), not R.C. 3127.21(B), but both statutes require courts to consider all the listed factors.  *Quint v. Lomakoski*, 167 Ohio App.3d 124, 2006-Ohio-3041, 854 N.E.2d 225, ¶ 13 (2d Dist.).

had lived in Ohio for many years, that they lived in Indiana for about a year before the hearing, that they had some close connections with Ohio, including both sets of grandparents and the father, and that one child still returned to Ohio on occasion for significant medical treatment.

{¶ 26} The trial court cannot be blamed for failing to consider evidence that a moving party does not submit. Nonetheless, the record does not permit us to apply the presumption noted in the cited cases, because the court's entry states only that "Ms. Walker and the minor children herein have resided in the state of Indiana now for a period in excess of one year and that they have a significant connection with that state. To this end, the substantial evidence that is currently available relating to the children's care, protection, training and personal relationship all rests in the state of Indiana * * *." August 1, 2012 Entry, p. 4.

{¶ 27} As an additional matter, we note that the trial court dismissed the case for lack of jurisdiction. However, R.C. 3127.21(C) states that: "If a court of this state determines that it is an inconvenient forum and that a court of another state is a more appropriate forum, it shall stay the proceedings upon condition that a child custody proceeding be promptly commenced in another designated state and may impose any other condition the court considers just and proper." Dismissal, therefore, is not the appropriate remedy under the statute.

{¶ 28} Typically, "[t]he trial court's decision whether to exercise jurisdiction is reviewed upon an abuse-of-discretion standard." *Walter v. Liu*, 193 Ohio App.3d 185, 2011-Ohio-933, 951 N.E.2d 457, ¶ 12 (8th Dist.). "[A]n abuse of discretion most commonly arises from a decision that was unreasonable." *Wilson v. Lee*, 172 Ohio App.3d 791, 2007-Ohio-4542, 876 N.E.2d 1312, ¶11 (2d Dist.). "Decisions are unreasonable if they are not supported by a sound reasoning process." *AAAA Ents., Inc. v. River Place Community Urban*

*Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). Accord, *e.g.*, *State v. Hipshire*, 2d Dist. Darke No. 2010–CA–07, 2011-Ohio- 3863, ¶ 41 (noting that a decision is unreasonable, and is not entitled to the normal degree of deference, where the decision is based on "incorrect legal grounds, not on factual conclusions relating to the state of the evidence.").

**{¶ 29}** Accordingly, the trial court abused its discretion by dismissing the action rather than staying the proceedings, and by failing to consider the statutory factors in R.C. 3127.21(B). The first and second assignments of error are sustained.

III.   Did the Trial Court Err in Dismissing the Action Based on Improper Venue?

**{¶ 30}** As a further matter, we note that the trial court also dismissed the action based on "improper venue," because the presumed custodial parent, Paula, and the children, primarily resided in Montgomery County, Ohio, when the complaint was filed.

**{¶ 31}** Neither party has raised the venue issue on appeal. Notably, Paula also did not raise the issue of "improper venue" in the trial court. Instead, she asked that the action be dismissed for lack of an inconvenient forum or be stayed pending commencement of an action in Indiana. However, we are compelled to consider venue because the trial court dismissed the action on both jurisdictional and venue grounds, thus intertwining the matters.

**{¶ 32}** As was noted previously, this action was originally filed in May 2011, before the minor children moved to Indiana. Paternity was stipulated in July 2011, and visitation was established. The trial court then dismissed the action for lack of prosecution in October 2011. Jason refiled the action a few days later, after the children had moved to Indiana. However, the refiling was still within six months of the move, as is required for "home state" jurisdiction under

R.C. 3127.15.

{¶ 33}   When the trial court dismissed the action  in August 2012, it concluded in its entry that venue was improper because the mother and children lived primarily in Montgomery County, Ohio, when the complaint was filed.   However, the court's reference in this regard was to May 2011, when the original complaint was filed.   The court did not rely on the residence or status of the parties as of October 2011, when the complaint was refiled after the dismissal for lack of prosecution.   At that time, the mother and children lived primarily in Indiana, and did not reside in Montgomery County, Ohio.

{¶ 34}   Conversely, in the same entry, the trial court relied on the later date of filing, i.e., October 2011, in discussing the effect of certain parts of the earlier-filed action. Specifically, the trial court noted that the paternity of the minor children had not been established because the action was dismissed for lack of prosecution before the July 2011 stipulated order of paternity became "final."   August 1, 2012 Entry, pp. 2-3.   Thus, the court concluded that the prior case was of no effect, and did not establish paternity.   This is inconsistent with using the earlier filing date to determine venue.

{¶ 35}   If the trial court intended to use May 2011 as the filing date for purposes of analyzing venue, it should have used the same case for purposes of the paternity stipulation as well.   The trial court should have applied a consistent filing date for purposes of its analysis, regardless of the issue under consideration.

{¶ 36}   If the trial court concluded that venue was improper based on residence as of the original filing date in May 2011, the court could have transferred the action to an appropriate county, rather than dismissing the case.   This would have been consistent with Juv.R.10(A),

which provides that:

> Any person may file a complaint to have determined the custody of a child not a ward of another court of this state, and any person entitled to the custody of a child and unlawfully deprived of such custody may file a complaint requesting a writ of habeas corpus. Complaints concerning custody shall be filed in the county where the child is found or was last known to be.

{¶ 37}    The rule does not require that a child must primarily be a resident of a county in order for venue to be appropriate; it only requires that the child can be "found" in the country, or was "last known to be" in the county.  When the action was originally filed in May 2011, the children could have been found in or could have been "last known to be" either in Clark County or Montgomery County, because they could have been with either parent.   The trial court did not make a finding on this point, but concluded that venue was improper because the mother and children "primarily" resided in Montgomery County.

{¶ 38}    More importantly, even if venue were more appropriate in Montgomery County in May 2011, the trial court did not have authority to dismiss the action based on improper venue.  "In juvenile matters, the issue of improper venue is governed by Juv.R. 11.  Juv.R. 11(A) provides that if a child resides in a county of this state and the proceeding is commenced in a court of another county, that court, on its own motion or a motion of a party, may transfer the proceeding to the county of the child's residence.  The rule does not provide for the dismissal of a case for improper venue."  *In re W.W.*, 190 Ohio App.3d 653, 2010-Ohio-5305, 943 N.E.2d 1055, ¶ 21 (11th Dist.).

{¶ 39}    Of course, in October 2011, the mother and children were no longer residing in

Montgomery County. The trial court might still have concluded at that point that the children were "last known to be" in Montgomery County, but Montgomery County had virtually no connection with the action at that point. Juv.R.11(A) does not address this specific point. However, the staff notes to Juv.R.10 note that situations may arise where a child is no longer a resident of any Ohio county. In this regard, the notes state that:

> Venue in the custody and habeas corpus situation differs from the more typical delinquency, unruly, neglect, dependency, abuse, or juvenile traffic offender case because the matter does not involve conduct by a child. Rather, the concern is to find a proper place for a child who may be found without a legal custodian. Hence, the reference in this rule to venue being "where the child is found or was last known to be." When considering a child custody case in which a child from an Ohio county is removed to another state, the venue provisions of Juv R 10 should be read in conjunction with the Uniform Child Custody Jurisdiction Act (3109.21 et seq.) which, under certain circumstances, permits an Ohio court to assume jurisdiction even though the child is absent from this state.

**{¶ 40}** Accordingly, if the filing date of October 2011 were used as the benchmark, Ohio had jurisdiction over the action as the "home state," even though the children were then absent from the state. The proper method of declining to assert jurisdiction would be to find that Ohio is an inconvenient forum under R.C. 3127.21(B), and to stay the proceedings pending initiation of an action in the proper state. See R.C. 3127.21(C). Dismissal on the basis of improper venue would not be appropriate.

## IV. Conclusion

**{¶ 41}** All of Jason's assignments of error having been sustained, the judgment of the trial court is reversed, and this cause is remanded for further proceedings.

. . . . . . . . . . . . .

DONOVAN and HALL, JJ., concur.

Copies mailed to:

Adrienne D. Brooks
Laura L. Kendell
Hon. Thomas J. Capper