**In re M.T.**

[Cite as *In re M.T.*, 178 Ohio App.3d 546, 2008-Ohio-5174.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 22701.

Decided Oct. 3, 2008.

Andrea L. Harris, pro se.

Jack Harrison, for appellee.

WOLFF, Presiding Judge.

{¶ 1} Andrea Harris, mother of M.T., appeals from a judgment of the Montgomery County Court of Common Pleas, Juvenile Division ("the Ohio court"), which ordered that physical custody of M.T. be given to his father, Michael Booker–Tucker, in accordance with an order of the Juvenile Court of Madison County, Alabama ("the Alabama court"), granting custody of M.T. to Booker–Turner. For the following reasons, the judgment is reversed.

I

{¶ 2} M.T. was born on February 26, 2001, in Huntsville, Madison County, Alabama. Harris is M.T.'s mother. Booker–Tucker claims to be the father, and he is listed on M.T.'s birth certificate as Michael Emmanuel Tucker Jr. Harris was a 19–year–old college student when M.T. was born. She resided with Booker–Tucker, who was then 25. Shortly after M.T.'s birth, Harris returned to Ohio and lived with her parents. During the summer of 2001, Booker–Tucker filed a petition for custody of M.T. in the Madison County Juvenile Court, case No. CS 2001.166. In January 2002, custody of M.T. was awarded to Harris, who remained in Ohio.

{¶ 3} In 2006, Booker–Tucker filed an amended complaint in case No. CS 2001.166, and Harris responded with counterclaims. On August 29, 2007, the Alabama court dismissed the claims and vacated the January 18, 2002 custody order for want of subject-matter jurisdiction.

{¶ 4} Shortly thereafter, in September 2007, Booker–Tucker filed an amended petition to establish paternity and for custody in the Alabama court. Harris apparently did not respond to this complaint. On November 2, 2007, a different judge of the Alabama court, Ruth Ann Hall, held a hearing on Booker–Tucker's request for custody. Harris was not present. The court granted custody of M.T. to Booker–Tucker by default judgment.

{¶ 5} On December 7, 2007, Harris filed a complaint in the Ohio court to establish the paternity of her son, M.T.; to obtain interim custody of M.T.; and for child support. The magistrate entered an ex parte order adjudicating Harris the legal custodian of M.T., and it scheduled a hearing on the motion for December 11, 2007. Following the hearing, the magistrate found that there had been an active custody case in Alabama since 2001 and that the Alabama court was the proper court to hear the matter. The magistrate noted that Booker–Tucker had been granted legal custody of the child at a hearing in Alabama on November 2, 2007, and that Harris "had availed herself of that jurisdiction and filed motions in that case." The Ohio court dismissed Harris's action and terminated the ex parte order.

{¶ 6} On December 12, 2007, Booker–Tucker received an order from the Alabama court directing law-enforcement officials to assist him in obtaining physical custody of M.T.

{¶ 7} In January 2008, Harris wrote to the Ohio court, disputing the findings of the December 18, 2007 order and asserting that Alabama did not have jurisdiction over the child-custody matter. The Ohio court construed her letter as objections to the magistrate's December 18, 2007 decision. The Ohio court

overruled the objections, finding that the objections were untimely and were not supported by a transcript. Harris did not appeal the Ohio court's judgment.

{¶ 8} On March 4, 2008, Booker–Tucker filed a motion for custody in the Ohio court and requested a writ of habeas corpus ordering the Montgomery County Sheriff to restore custody of M.T. to him. The Ohio court granted the writ, setting a hearing for March 6, 2008, and ordering M.T. to be brought by the sheriff's department for the hearing.

{¶ 9} The Ohio court held hearings on March 6, 10, 13, and 14, 2008. There is no transcript of the events of March 6, 2008. The record suggests that the Ohio court was prepared to hold a hearing but neither Harris nor M.T. was present.

{¶ 10} Harris did not appear for the March 10 hearing. Booker–Tucker testified and presented the testimony of his father. Booker–Tucker presented documents to substantiate that he had a valid custody order from the juvenile court in Madison County, Alabama, and that the Ohio court substantiated the Alabama decision in December 2007. He testified about his unsuccessful attempts to obtain physical custody of M.T. from Harris, and that Harris had been served with the writ of habeas corpus on March 9, the previous day. Booker–Tucker indicated that Harris had personality disorders. In response to questions by the Ohio court, Booker–Tucker discussed the history of the Alabama action and Harris's alleged denial of visitation. Booker–Tucker's father also testified about Harris's personality, attempts to retrieve M.T. from Harris's residence, and domestic violence by Harris's current boyfriend. At the conclusion of the March 10 hearing, the Ohio court issued a new order to the Montgomery County Sheriff's Office and to Montgomery County Children's Services ("MCCS") to place M.T. in the custody of MCCS until another hearing could be held with Harris present.

{¶ 11} Harris attended the March 13, 2008 hearing without counsel. Although Booker–Tucker's counsel was present, Booker–Tucker was not. The Ohio court acknowledged that Harris disputed that the Alabama court had jurisdiction to grant Booker–Tucker custody of M.T., and the Ohio court questioned Harris about whether she would be represented by counsel in the Montgomery County case. Harris indicated that she had an attorney in Alabama but not in Ohio. Harris informed the Ohio court that she had obtained a civil protection order against Booker–Tucker due to harassment and threats, and that M.T. had lived in Ohio since he was two weeks old. Harris asserted that paternity had never been established through testing. The Ohio court indicated that it would contact the Alabama judge, and it continued the hearing until the following day.

{¶ 12} On March 14, Harris appeared with attorney Carmella Mumm–Crawford, a friend of one of Harris's relatives. Mumm–Crawford indicated that she was there as a "friend of the court," and she requested a continuance until Harris

could retain counsel in Ohio. Mumm–Crawford also asked the Ohio court to reconsider the jurisdictional issue. She stated that Harris did not have notice of the custody hearing in Alabama, which occurred less than a month after the Alabama court determined that it did not have subject-matter jurisdiction. Mumm–Crawford indicated that the custody hearing was the same date and time as Harris's hearing on her civil protection order. The Ohio court denied the request for a continuance, and it stated that the Ohio court had decided "on at least two occasions, if not three orders now, that it appears that there is valid jurisdiction in the State of Alabama, that there is an order in place that gives custody of [M.T.] to his father, and the Court is going to honor that particular status of the law. And the law requires that I adhere to the sister state's order at this particular point in time."

{¶ 13} In a written entry following the hearing, the Ohio court "confirmed that there is a lawful order of custody * * * from the Juvenile Court of Madison County, Alabama" and that "proceedings are pending under Case Number CA 2001 116.02." The Ohio court ordered that M.T. be released to Booker–Tucker pending further proceedings in Alabama.

{¶ 14} On April 2, 2008, Harris filed a "Petition Requesting Appeal Hearing" with numerous attachments. Harris's petition has been construed as her notice of appeal. Harris raises four assignments of error on appeal. Although not raised by Harris, we find that the Ohio court erred in granting the writ of habeas corpus, because Booker–Tucker had an adequate remedy at law.

## II

{¶ 15} As discussed above, this matter came before the Ohio court in March 2008 on Booker–Tucker's petition for a writ of habeas corpus, seeking an order granting physical custody of M.T. to him.

{¶ 16} R.C. 3127.33 addresses the enforcement of an out-of-state custody determination. It provides:

{¶ 17} "(A) A court of this state shall recognize and enforce a child custody determination of a court of another state if that state exercised jurisdiction in substantial conformity with this chapter or the determination was made under factual circumstances meeting the jurisdictional standards of this chapter and the determination has not been modified in accordance with this chapter.

{¶ 18} "(B) A court of this state may use any remedy available under other law of this state to enforce a child custody determination made by a court of another state. The remedies provided in sections 3127.31 to 3127.47 of the Revised Code are cumulative and do not affect the availability of other remedies to enforce a child custody determination."

{¶ 19} Although R.C. 3127.33 provides that other nonstatutory remedies may be used to enforce a custody order, it is well established that habeas corpus is an "extraordinary remedy" that is warranted "where there is an unlawful restraint of a person's liberty and there is no adequate remedy in the ordinary course of law." *Pegan v. Crawmer* (1996), 76 Ohio St.3d 97, 99, 666 N.E.2d 1091.

{¶ 20} R.C. 3127.31 through 3127.47 provide "a mechanism by which a person may register and enforce a child custody determination issued by another state." *Harris v. Harris,* Hocking App. No. 05CA5, 2005-Ohio-3457, 2005 WL 1579462, at ¶ 5. Without question, the provisions of the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA") constitute an adequate remedy at law. *Harris* (writ of habeas corpus unavailable to enforce Georgia custody order); see also *Luchene v. Wagner* (1984), 12 Ohio St.3d 37, 12 OBR 32, 465 N.E.2d 395 (holding that a writ of habeas corpus was unavailable when former R.C. 3109.32(A) provided an adequate statutory remedy to enforce an Illinois custody order).

{¶ 21} Because the UCCJEA afforded Booker–Tucker an adequate remedy at law, we find that the Ohio court erred in granting his petition for a writ of habeas corpus.

{¶ 22} Although we could reverse the Ohio court's judgment enforcing the custody order on this basis alone, we find that Harris's fourth assignment of error would have also provided a ground for reversal of the judgment.

### III

{¶ 23} Harris's fourth assignment of error states:

{¶ 24} "Because of lack of service, and the absence of Ms. Harris at the proceedings, Ms. Harris was unable to raise, and the court failed to follow, the required statute regarding custody of a child under Ohio law (UCCJA)."

{¶ 25} In her fourth assignment of error, Harris asserts that the Ohio court failed to properly consider whether the Alabama court had jurisdiction to issue the custody order in favor of Booker–Tucker, and that the Ohio court thus erroneously enforced that void order.

{¶ 26} While addressing Booker–Tucker's petition for a writ of habeas corpus, Harris asked the Ohio court to reconsider its jurisdictional ruling that Alabama had issued a lawful order. The Ohio court was presented with several documents from the Alabama action, and both parties testified about the procedural history of that case and this action. Both Booker–Tucker and Harris testified about their and M.T.'s connections with Alabama and Ohio. The Ohio court indicated that it would be contacting the Alabama court, and we presume that it did so. As

stated above, the Ohio court concluded that Alabama had validly retained jurisdiction over M.T.'s custody.

{¶ 27} Ohio has adopted the UCCJEA, which was designed to resolve interstate custody disputes and to avoid jurisdictional competition with courts of other jurisdictions in custody matters. *State ex rel. Morenz v. Kerr,* 104 Ohio St.3d 148, 2004-Ohio-6208, 818 N.E.2d 1162, at ¶ 16. To this end, the UCCJEA, which is codified in Ohio law at R.C. 3127.02 et seq., prioritizes "home state" jurisdiction. A child's "home state" is one where he or she lived with a parent for at least six consecutive months prior to the commencement of the custody or visitation proceeding. R.C. 3127.01(B)(7).

{¶ 28} The federal Parental Kidnapping Prevention Act ("PKPA"), Section 1738A et seq., Title 28, U.S.Code, also relates to questions of jurisdiction in cases involving interstate custody and visitation disputes. The PKPA mandates that states give full faith and credit to valid child-custody orders of another state (Section 1738A(a)) and that states give up jurisdiction if no party or child is living in the state (Section 1738A(d)).

{¶ 29} Under the UCCJEA, a "domestic court" has discretion to assume or divest itself of jurisdiction over matters concerning interstate custody or visitation, because the act contemplates that more than one state may meet jurisdictional requirements. *Harper v. Harper,* Franklin App. No. 04AP–685, 2005-Ohio-3989, 2005 WL 1840019, at ¶ 15; *Miller v. Henry,* Franklin App. No. 02AP–673, 2003-Ohio-1511, 2003 WL 1563827, at ¶ 18. A trial court exercises its discretion in determining whether it may exercise jurisdiction over a case under the UCCJEA or the PKPA. *Harper,* 2005-Ohio-3989, 2005 WL 1840019, at ¶ 14 and 18, citing *State ex rel. Aycock v. Mowrey* (1989), 45 Ohio St.3d 347, 352, 544 N.E.2d 657.[1]

{¶ 30} Under R.C. 3127.33, an Ohio court must recognize and enforce a child-custody determination of a court of another state if that state exercised jurisdiction in substantial conformity with the UCCJEA or the determination was made under circumstances meeting the jurisdiction requirements of the statute and if the determination has not been modified.

{¶ 31} When reviewing decisions made under the UCCJEA, the trial court's decision as to whether to exercise jurisdiction should be reversed only upon a showing of an abuse of discretion. *Bowen v. Britton* (1993), 84 Ohio App.3d 473, 478, 616 N.E.2d 1217. An abuse of discretion will be found where

---

1. In 1995, the Ohio General Assembly enacted Ohio's version of the UCCJEA and repealed its predecessor, the Uniform Child Custody Jurisdiction Act ("UCCJA"), R.C. 3109.22. The central purpose of the UCCJEA is the same, but it attempted to simplify some of the jurisdictional conflicts that had persisted when states had adopted the UCCJA.

the trial court acted arbitrarily, capriciously, or unreasonably. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140. When applying the abuse-of-discretion standard of review, this court must not substitute its judgment for the trial court's. *Quint v. Lomakoski*, 167 Ohio App.3d 124, 2006-Ohio-3041, 854 N.E.2d 225, at ¶ 12.

{¶ 32} Although the Ohio court again concluded that the Alabama court had jurisdiction to issue a custody order in favor of Booker–Tucker, the Ohio court did not set forth its reasoning for reaching that conclusion. Moreover, the record concerning the Alabama court's jurisdiction is limited to the testimony of the parties and a limited number of documents. The record before us, however, strongly suggests that Alabama no longer has jurisdiction under the UCCJEA to render custody orders and that Ohio is the appropriate forum to determine custody.

{¶ 33} It is undisputed that M.T. was born in Alabama in 2001 and that Harris returned to Ohio with M.T. shortly after he was born. Booker–Tucker sought custody of M.T. in Alabama, and the Alabama court awarded legal custody to Harris in 2002. Although the record indicates that Harris periodically visited Alabama, it is undisputed that M.T. has resided with Harris in Ohio for the past several years.

{¶ 34} The Alabama custody action was reactivated in 2006. On August 29, 2007, the Alabama court issued a final order, stating:

{¶ 35} "Case called, and it is ORDERED, sua sponte, that (1) the judgment of this Court dated January 18, 2002 be vacated as void for want of subject matter jurisdiction; (2) the petition and counter-petition upon which it was founded be dismissed without prejudice; (3) all subsequent proceedings, including all pending claims for relief, be dismissed for want of subject matter jurisdiction, as being founded on a void judgment; and (4) costs to be taxed as paid."

{¶ 36} Despite the August 29, 2007 order vacating all prior orders for lack of subject-matter jurisdiction, Booker–Tucker invoked the jurisdiction of the Alabama court in September 2007, against seeking custody. After a hearing before a different judge, Booker–Tucker successfully obtained a custody order, by default judgment, on November 28, 2007.

{¶ 37} In the Ohio court's December 2007 determination that the Alabama court had jurisdiction, the Ohio court noted that there had been an active case since 2001 and Harris had participated in that action, thus giving the Alabama courts personal jurisdiction over her. The record indicates, however, that the prior order of the Alabama court had been vacated. Therefore, when Booker–Tucker subsequently sought custody of M.T. in September 2007, Booker–Tucker

was "commencing" an action for an "initial determination" of M.T.'s custody. R.C. 3127.01.

{¶ 38} The Alabama court's jurisdiction to make an initial determination in a child-custody proceeding is set forth in Ala.Code 1975, Section 30–3B–201, which states:

{¶ 39} "(a) Except as otherwise provided in Section 30–3B–204, a court of this state has jurisdiction to make an initial child custody determination only if:

{¶ 40} "(1) This state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state;

{¶ 41} "(2) A court of another state does not have jurisdiction under subdivision (1), or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under Section 30–3B–207 or 30–3B–208, and:

{¶ 42} "a. The child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence; and

{¶ 43} "b. Substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships;

{¶ 44} "(3) All courts having jurisdiction under subdivision (1) or (2) have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under Section 30–3B–207 or 30–3B–208; or

{¶ 45} "(4) No court of any other state would have jurisdiction under the criteria specified in subdivision (1), (2), or (3).

{¶ 46} "(b) Subsection (a) is the exclusive jurisdictional basis for making a child custody determination by a court of this state.

{¶ 47} "(c) Physical presence of a child is not necessary or sufficient to make a child custody determination."

{¶ 48} See also R.C. 3127.15, which is virtually identical to Ala.Code 1975, Section 30–3B–201.

{¶ 49} Based on the evidence in the record, there is no evidence to support the conclusion that Alabama was the "home state" of M.T. in September 2007 or that there was substantial evidence in Alabama in 2007 concerning M.T.'s care, protection, training, and personal relationships. As stated above, M.T. had been residing with his mother and attending school (or being home-schooled) in Ohio

during the relevant period. In short, the record is devoid of *any* evidence that the Alabama court had subject-matter jurisdiction to make an initial determination as to M.T.'s custody in 2007. (We note that the fact that the Alabama case was initially filed in 2001 and that Alabama had exercised personal jurisdiction over Harris in that case is irrelevant to the Alabama court's subject-matter jurisdiction over M.T.'s custody in 2007 and 2008.)

{¶ 50} If the Alabama court's November 2007 order had been a modification of a valid 2002 custody order issued in that state, the Alabama court could have arguably exercised continuing, exclusive jurisdiction over M.T.'s custody in November 2007. See Ala.Code 1975 Section 30–3B–202 (implementing Section 202 of the UCCJEA). After the August 29, 2007 judgment, however, there was no existing child-custody determination over which the Alabama court could exercise continuing, exclusive jurisdiction.

{¶ 51} Because we find no evidence to support the Ohio court's conclusion that the November 2007 Alabama order granting Booker–Tucker custody of M.T. was granted by a court with subject-matter jurisdiction to do so, we conclude on this record that the Ohio court would have abused its discretion in enforcing that order had a writ of habeas corpus been available.

{¶ 52} Harris's fourth assignment of error is sustained.

## VI

{¶ 53} In Harris's first, second, and third assignments of error, Harris claims that the Ohio court's order to transfer M.T. to Booker–Tucker was invalid, because she was never served with notice of the March 2008 hearings in accordance with the Rules of Civil Procedure. She contends that the Ohio court further abused its discretion by failing to grant her a continuance in order to obtain counsel and that she was denied the opportunity to fully present "her side" to the Ohio court.

{¶ 54} As stated above, the Ohio court issued the writ on March 4, 2008, setting a hearing for March 6, 2008. At the March 10 hearing, Booker–Tucker indicated that the writ had been delivered to the sheriff. Booker–Tucker believed that Harris had been served by the sheriff and a private process server. Booker–Tucker testified that he went to Harris's house nine or ten times with the sheriff and Harris refused to answer the door.

{¶ 55} An affidavit by a process server, Antonio M. Green, was filed on March 11, 2008, indicating that Harris had been personally served with the writ of habeas corpus at 1:45 p.m. on March 9, 2008. The description of the individual served stated: age 32, sex female, race black, height 5/6, weight 140, black hair, and glasses. (In her brief, Harris disputes that she was served, indicating that

she was six months pregnant and 200 pounds in March 2008 and that she does not wear glasses.)

{¶ 56} At the March 13 hearing, the Ohio court had an informal discussion with Harris about whether she would be represented by counsel and other issues to be addressed the following day. This discussion included the following:

{¶ 57} "THE COURT: * * * The biggest problem that this Court faces in resolving the matters here is the circumstances we've been through in the last several days in trying to get a hold of you and in contact with you and having you cooperate with the Court. I—as a result, I—my discussions earlier, or several times in the last couple of days with the police department and Sheriff's Office and Children Services have been that you have indicated several times that you would be represented by an attorney. In fact, I've received several names of attorneys. And it appears that you're not represented by counsel. You're not going to be represented by an attorney, is that correct?

{¶ 58} "MS. HARRIS: No, I have an attorney in Alabama.

{¶ 59} "THE COURT: In Alabama?

{¶ 60} "MS. HARRIS: Yes.

{¶ 61} "THE COURT: Okay. And I think I saw a copy of a—

{¶ 62} "MS. HARRIS: There's litigation going on there.

{¶ 63} "THE COURT: —a motion to stay proceedings in Alabama that was filed by the Alabama lawyer?

{¶ 64} "MS. HARRIS: Yes.

{¶ 65} "THE COURT: Okay. And that was filed today or yesterday?

{¶ 66} "MS. HARRIS: That was filed yesterday.

{¶ 67} "THE COURT: Okay. So, with regards to that matter—but, you do not have an attorney here?

{¶ 68} "MS. HARRIS: No, my attorney that I did have told me that Ohio said they didn't have jurisdiction, so I needed to get an attorney in Alabama. And that is what I've done.

{¶ 69} "THE COURT: Okay. So, I want to finish and complete the, you know, the hearing here tomorrow. It makes sense, based on the motion—a copy of the motion that's been filed in Alabama, that pursuant to the law, this court has the ability to communicate with the judge in Alabama. So, I would probably attempt to make telephone contact with the judge in Alabama this afternoon so that, you know, I don't proceed here not knowing something that's going on down there, and vice versa.

{¶ 70} "So, I will make that communication this afternoon. * * * [discussion about a protection order against Booker–Tucker followed]. * * *

{¶ 71} "THE COURT: * * * [B]ecause of the experience I've had, unfortunately, I cannot release Michael to you until tomorrow's hearing.

{¶ 72} "MS. HARRIS: I was never served with anything, and I let the Sheriff know. Actually, he got in contact with my attorney. When they were trying to contact me, I was at work, Saturday and Sunday. Friday, I was at a doctor's appointment. I was getting my glucose checked. I wasn't there the whole entire day. So, whenever they stopped by, I was not there.

{¶ 73} "THE COURT: Well, it sounds—I hear what you're saying. It sounds to me like there has been quite a bit of time, though, here recently, whereby—I think even according to the child, you were in doing home education for what reason?"

{¶ 74} This statement was followed by a discussion of Harris's home schooling of M.T. No further discussion was held regarding whether Harris was served with notice of the hearings.

{¶ 75} At the beginning of the hearing on March 14, Harris requested a continuance so that she could obtain counsel. Mumm–Crawford, acting as a friend of the court, stated:

{¶ 76} "I understand that the Court's understanding was that she had several lawyers appointed. I believe it's her understanding that she did have one lawyer. There were other names mentioned, but she never retained or ever talked with— I know the Court mentioned Mr. Ben Swift. She never talked to him, and she never had that understanding with him. That had never come up. She only had the one lawyer, and she wishes to have a lawyer here to represent her today in this proceeding here in Ohio."

{¶ 77} The Ohio court responded, "The Court would indicate that we have attempted on several occasions to confirm whether [Harris] was going to be represented by counsel or not. At this particular stage, I'm not going to continue the proceedings again to obtain counsel. I think that [Harris] was clear yesterday that she had counsel in Alabama, and she didn't want counsel here at the time. And, you know, of course, I would never deny a person the right to have representation, but I'm not going to continue this hearing to—again to accomplish that particular piece of the—of the puzzle."

{¶ 78} Mumm–Crawford reiterated that she was not representing Harris as counsel and was there as a friend of the court. The Ohio court indicated its understanding and again denied the request for continuance.

{¶ 79} In light of our holding that the Ohio court could not properly grant a writ of habeas corpus and our disposition of the fourth assignment, we need not resolve Harris's arguments regarding the March 2008 hearings. However, we note that the record raises plausible concerns that Harris was not properly served, and we disagree with the Ohio court that Harris's statements on March 13 reflect a "clear" intent to forgo counsel.

{¶ 80} The first, second, and third assignments of error are overruled as moot.

## V

{¶ 81} The judgment of the Ohio court is reversed.

Judgment reversed.

GRADY and WALTERS, JJ., concur.

SUMNER E. WALTERS, J., retired, of the Third District Court of Appeals, sitting by assignment.