[Cite as *Baker v. Baker*, 2018-Ohio-3065.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

LA SHANDA E. BAKER :
:
    Plaintiff-Appellant : Appellate Case No. 27850
:
v. : Trial Court Case No. 2007-DR-370
:
PORTIEA BAKER : (Domestic Relations Appeal)
:
    Defendant-Appellee :
:

. . . . . . . . . . .

O P I N I O N

Rendered on the 3rd day of August, 2018.

. . . . . . . . . . .

CHARLES W. SLICER, III, Atty. Reg. No. 0059927, 426 Patterson Road, Dayton, Ohio 45419
    Attorney for Plaintiff-Appellant

MARK A. FISHER, Atty. Reg. No. 0066939, 5613 Brandt Pike, Huber Heights, Ohio 45424
    Attorney for Defendant-Appellee

. . . . . . . . . . . . .

TUCKER, J.

**{¶ 1}** Plaintiff-appellant La Shanda Baker appeals from an order of the Montgomery County Court of Common Pleas, Domestic Relations Division, which reallocated custody of her minor children to her ex-husband Portiea Baker. Ms. Baker contends that the custody modification is not supported by the record. She further contends that the trial court lacked subject matter jurisdiction over the matter.

**{¶ 2}** We conclude that the trial court did have subject matter jurisdiction over this action and that the record supports the modification of custody. Accordingly, the judgment of the trial court is affirmed.

## I. Facts and Procedural History

**{¶ 3}** La Shanda and Portiea Baker were married in 1991. They have two minor children as a result of their marriage.[1] Ms. Baker filed a complaint for divorce in March 2007. Mr. Baker filed an answer and counterclaim in which he sought paternity testing of the youngest child. Subsequent DNA testing confirmed that he is the father. A decree of divorce was filed by the Montgomery County Court of Common Pleas, Domestic Relations Division, in January 2008. Ms. Baker was designated as sole legal custodian and residential parent of both children. Mr. Baker was ordered to pay child support in the amount of $270 per month.

**{¶ 4}** In February 2012, Ms. Baker, along with the children, moved to Texas for purposes of employment. In July 2012, the Montgomery County Department of Job & Family Services filed a motion seeking to hold Mr. Baker in contempt, alleging that he

---

[1] The Bakers' third, and eldest, child was emancipated in 2010.

was over $14,000 in arrears with regard to child support. Mr. Baker obtained counsel in October 2012. A finding of contempt was issued, and an agreed order was entered permitting Mr. Baker to purge the contempt by tendering immediate payment of $1,000 and by remaining current on the support and arrearage payments.

{¶ 5} In January 2013, Mr. Baker filed a motion to hold Ms. Baker in contempt, alleging that she had moved to Texas without informing him of the move. The motion was voluntarily dismissed in March 2013. In July 2013, he again filed a motion seeking to hold Ms. Baker in contempt. At the same time, he filed a motion seeking modification of custody and alleging that he had not seen his children since they moved to Texas. Mr. Baker voluntarily dismissed both motions in February 2014.

{¶ 6} In November 2016, Mr. Baker again filed a motion for a modification of custody and to hold Ms. Baker in contempt. A hearing was conducted on August 1, 2017. Ms. Baker appeared pro se. At the end of the hearing, the magistrate interviewed both of the children in chambers.[2]

{¶ 7} The magistrate issued a decision in which it was noted that, as of June 30, 2017, Mr. Baker's child support arrearage was $15,465.79. The magistrate further found the following:

> Defendant's concerns are plaintiff's unannounced and unilateral removal of the children to Texas. This has impacted defendant's contact and companionship with the children. It was uncontroverted that plaintiff neither contacted the Court nor defendant in writing about her relocation to Texas. It was disputed whether plaintiff "told" the defendant. Defendant

---

[2] There is no indication that the interview with the children was recorded.

was credible in his testimony of no notice.

Defendant did not see the children as a result of the relocation. Defendant was able to see the children in the summer of 2017 because of the pre-hearing order. Defendant had parenting time in 2016. Defendant has provided his son with a cell phone in order to maintain communication.

Plaintiff confirmed several incidents wherein defendant's access to the children was restricted by her. Defendant arranged airline travel for the children around Christmas and plaintiff would not allow the children to go because school had not yet recessed. Another incident involved defendant driving to Texas and not being able to take the children out of school for the visit. In both situations there was no testimony that the children had tests or other reason [sic] for not missing some school. Another incident involved the children coming [to Ohio] for a funeral. Defendant could not have the children as they were with "other" family.

Defendant's other concerns [sic] involve his son missing football participation because plaintiff did not obtain a physical. And defendant had concerns that when he sent his son a requested bicycle, no one in Texas would help him put it together or pump up the tires. Defendant sent his son tools and an air pump to accomplish this. Both of these incidents were confirmed by plaintiff but not adequately explained.

The children were interviewed as to their wishes and concerns. Both articulated that they wanted to stay with their father.

The report of the Family Relations Department Investigator confirms

the difficulties in defendant having contact with the children due to the relocation. The report confirmed the children's inability to communicate with defendant. The parties are not able to communicate with each other but it appears that defendant has, at least, tried to improve communication with the children via the cell phone.

The Family Relations Department report also confirms that the children wish to live with the defendant, their father.

\* \* \*

Plaintiff has not taken any initiative in facilitating continued contact and companionship with their father. She alleges that defendant doesn't visit but then acknowledged the previously confirmed incidents wherein she restricted the access. Plaintiff takes no responsibility in assisting with defendant's access or communications with the children.

{¶ 8} The magistrate further found a substantial change of circumstances caused by Ms. Baker's relocation and denial of parenting time, which the magistrate found to have detrimentally impacted the children's ability to have a relationship with their father. The magistrate also found that a change in custody would be in the best interest of the children and that any harm caused by the change would be outweighed by the advantages of such a change. Ms. Baker was awarded parenting time and was ordered to pay child support.[3]

{¶ 9} Ms. Baker filed objections to the magistrate's decision. The trial court overruled the objections. Ms. Baker appeals.

---

[3] Her child support obligation, which was set at $224.00 per month, was ordered offset by Mr. Baker's arrearage.

## II. Change In Circumstances

{¶ 10} Ms. Baker's first assignment of error states as follows:

THE RECORD DOES NOT SUPPORT THE COURT'S FINDING THAT A CHANGE OF CIRCUMSTANCES HAS OCCURRED AND [THE COURT] ERRED IN ORDERING A CHANGE OF CUSTODY.

{¶ 11} Ms. Baker contends that the decision of the trial court is not supported by the evidence.

{¶ 12} "We review a trial court's ruling on a motion for reallocation of parental rights for an abuse of discretion." *Chaney v. Chaney*, 2d Dist. Montgomery No. 24880, 2012–Ohio–626, ¶ 9, citing *Musgrove v. Musgrove*, 2d Dist. Montgomery No. 24640, 2011–Ohio–4460, ¶ 7. The term "abuse of discretion" is used to indicate that a trial court's decision is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). In most instances, an abuse of discretion "will result in a decision that is simply unreasonable, rather than unconscionable or arbitrary." *Chaney* at ¶ 9. " 'A decision is unreasonable if there is no sound reasoning process that would support that decision. It is not enough that the reviewing court, were it deciding the issue de novo, would not have found that reasoning process to be persuasive, perhaps in view of countervailing reasoning processes that would support a contrary result.' " *Id.*, quoting *Musgrove* at ¶ 8, quoting *AAAA Ents., Inc. v. River Place Community Redevelopment*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

{¶ 13} The change of custody analysis begins with R.C. 3109.04(E)(1)(a), which states, in pertinent part, as follows:

The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:

* * *

(iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child.

{¶ 14} "Although R.C. 3109.04 does not provide a definition of the phrase 'change in circumstances,' Ohio courts have held that the phrase is intended to denote 'an event, occurrence, or situation which has a material and adverse effect upon a child.' " *Lewis v. Lewis*, 12th Dist. Butler No. CA2001–09–209, 2002 WL 517991, *2 (April 8, 2002), citing *Rohrbaugh v. Rohrbaugh*, 136 Ohio App.3d 599, 604–05, 737 N.E.2d 551 (7th Dist. 2000). In order to warrant the abrupt disruption of the child's home life, the change in circumstances must be one "of substance, not a slight or inconsequential change." *Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 674 N.E.2d 1159; *Travis v. Travis*, 2d Dist. Clark No. 2006 CA 39, 2007–Ohio–4077, ¶ 23. "Further, R.C. 3109.04(E)(1)(a) creates a rebuttable presumption that retaining the residential parent designated by the prior

decree is in the child's best interest." *Madden v. Madden*, 2d Dist. Montgomery No. 15576, 1996 WL 339941, * 1. The statute creates this presumption in order to "provide stability to the children's custodial status." *Pennington v. Pennington*, 2d Dist. Montgomery No. 19092, 2002 WL 1252173, * 3. Moreover, as a general rule, relocation alone is not enough to trigger a change of circumstances, unless the move also brings with it an adverse or negative impact upon the child's welfare. *Id.*, citing *Vincenzo v. Vincenzo*, 2 Ohio App.3d 307, 441 N.E.2d 1139 (11th Dist. 1982), paragraph two of the syllabus.

{¶ 15} As noted, the magistrate's decision was based upon the finding that Ms. Baker's relocation and the denial of parenting time to Mr. Baker constitute a change in circumstances. We disagree and note that the record does not support the magistrate's finding that Ms. Baker denied parenting time to Mr. Baker.

{¶ 16} The magistrate focused on three specific instances for the finding that Ms. Baker was at fault with regard to the lack of visitation. The magistrate found that Ms. Baker denied parenting with regard to one Christmas when Mr. Baker purchased the children airline tickets so that they could visit with him over the Christmas school break. The magistrate also found that, on one occasion, Mr. Baker drove to Texas to visit the children but was not able to take them out of school for a visit. Finally, the magistrate found that Ms. Baker denied visitation when she and the children returned to Ohio for a family funeral.

{¶ 17} We first note that with regard to an unspecified Christmas visitation, Mr. Baker purchased plane tickets for the children to fly to Ohio. It appears that because he failed to confer with Ms. Baker as to the dates of the children's Christmas break, the plane

tickets were for a flight on a date that the children were still in school. But there is nothing in this record to support a finding that the children did not spend that Christmas break with Mr. Baker. At most, one might surmise that the plane tickets had to be exchanged for a different date. Neither party testified that the children did not actually use the subject tickets, nor was there any testimony that the visitation was denied.

{¶ 18} We next address the occasion when Mr. Baker drove to Texas. It is not apparent from the testimony whether the children were in school at the time and, if so, whether they missed school for the visitation. But the magistrate assumed that the attempted visitation occurred during the school term, and that Ms. Baker thus denied the visitation. The magistrate appears to rebuke Ms. Baker for not letting the children miss school. However, the record demonstrates that Mr. Baker did have time with the children. In fact, he and the children stayed in a hotel for the duration of the visit.

{¶ 19} With regard to the visitation during the return to Ohio for a funeral, we note that there is evidence that the children spent time with Mr. Baker. He testified that he visited with them on someone's porch for ten to fifteen minutes, and he further indicated that, at some other point, the children were with him and that he had to return them to Ms. Baker at 7:30 a.m. for the return trip home.

{¶ 20} These three incidents were the only claimed denials of parenting time. And, the magistrate's findings regarding the alleged missed visitation are not supported by the record. Thus, we conclude that the record reveals no basis for the magistrate's finding that Ms. Baker denied parenting time.

{¶ 21} Further, while Mr. Baker testified that he did not see the children from the time of the move in February 2012 until the summer of 2014 when the maternal

grandmother brought the children to Ohio for a visit, he did not testify that the lack of visitation during this time period was caused by Ms. Baker acting to deny him time with the children.[4]   The report of the Family Investigator states that the children informed the investigator that they did spend summers with Mr. Baker.   The testimony of Ms. Baker's mother also corroborates the claim that the children spent the summers with Mr. Baker.   Finally, the record is devoid of any other testimony that would indicate Mr. Baker has missed any other planned parenting time.

{¶ 22} As noted above, case law indicates relocation alone is not enough to constitute a change of circumstances as any relocation will have some impact upon parenting time for the non-custodial parent.   We cannot conclude, from this record, that Mr. Baker missed any more parenting time than any non-custodial parent affected by a relocation would.   From a review of the record, we cannot say that there was evidence to support a finding that Ms. Baker denied parenting time so as to constitute a change of circumstances.

{¶ 23} This, however, does not end the discussion.   A child's advancing age coupled with a stated desire to reside with the non-custodial parent and related considerations may constitute a change in circumstances.   *Ashbridge v. Berry*, 2d Dist. Greene No. 2009-CA-83, 2010-Ohio-2914, ¶ 10, citing *In re James*, 113 Ohio St.3d 420, 2007-Ohio-2335, ¶ 18; *accord Moyer v. Moyer*, 10th Dist. Franklin No. 96APF05-659, 1996 WL 729859 (Dec. 17, 1996).

{¶ 24} In this case, the children resided with their mother for their entire lives.   The

---

[4] The magistrate's decision, for some reason, does not mention the month-long 2014 parenting time which occurred after the maternal grandmother brought the children to Ohio.

children were interviewed by the magistrate and the Family Investigator. Both children, who were ages thirteen and nine at the time of the hearing, clearly indicated that they now wish to reside with their father. They further indicated that Ms. Baker does not facilitate their ability to communicate with Mr. Baker when they are in Texas. The magistrate considered these factors, as well as the best interests of the children. The court further found that any harm caused by a modification would be outweighed by the advantages resulting from modification. We cannot say that this constitutes an abuse of discretion as there is competent, credible evidence supporting the decision.

{¶ 25} Accordingly, the first assignment of error is overruled.

### III. Court's Jurisdiction

{¶ 26} The second assignment of error asserted by Ms. Baker states:

THE COURT WAS WITHOUT JURISDICTION TO DECIDE APPELLEE'S MOTIONS AND TO ORDER A CHANGE OF CUSTODY.

{¶ 27} Ms. Baker claims that the trial court did not have jurisdiction to determine this case as the children have resided in Texas since February 2012. She further claims that, since subject matter jurisdiction can never be waived, we can review the issue regardless of her failure to raise it prior to, or during, the hearing. In support, she cites to the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), which she claims acts to deprive the trial court of jurisdiction.

{¶ 28} The UCCJEA acts to avoid jurisdictional conflicts and competition between different states with regard to child custody litigation. The intent of the UCCJEA is to ensure that a state court will not exercise jurisdiction over a child custody proceeding if a

court in another state is already exercising jurisdiction over the child in a pending custody proceeding. *Rosen v. Celebrezze*, 117 Ohio St.3d 241, 2008–Ohio–853, ¶ 20–21. In Ohio, the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA") is codified in R.C. Chapter 3127.

{¶ 29} Consistent with the UCCJEA, R.C. 3127.15(A)(1) provides criteria for the initial vesting of jurisdiction in an Ohio court over child custody disputes, and provides, in part:

> Except as otherwise provided in section 3127.183 of the Revised Code, a
> court of this state has jurisdiction to make an initial determination in a child
> custody proceeding * * * if * * * [t]his state is the home state of the child on
> the date of the commencement of the proceeding.

{¶ 30} "Home state" for purposes of R.C. Chapter 3127 is defined in R.C. 3127.01(B)(7) as follows:

> "Home state" means the state in which a child lived with a parent or a person
> acting as a parent for at least six consecutive months immediately
> preceding the commencement of a child custody proceeding and, if a child
> is less than six months old, the state in which the child lived from birth with
> any of them. A period of temporary absence of any of them is counted as
> part of the six-month or other period.

{¶ 31} In this case, the divorce proceedings were initiated in Montgomery County when Ms. Baker filed her initial complaint seeking a divorce and custody of the children. Neither party disputes that both parents and the children lived in Ohio at that time. Therefore, Ohio was the children's "home state" for purposes of the initial vesting of

jurisdiction over matters concerning their custody. Once initial jurisdiction is established, R.C. 3127.16 provides that "* * * a court of this state that has made a child custody determination consistent with section 3127.15 or 3127.17 of the Revised Code has exclusive, continuing jurisdiction over the determination until the court or a court of another state determines that the child [and] the child's parents * * * do not presently reside in this state." Since Mr. Baker continues to reside in Ohio, the Montgomery County Domestic Relations Court retains continuing jurisdiction over the matter. Accordingly, this case does not present a question of subject matter jurisdiction. The issue, instead, is whether the trial court properly exercised that jurisdiction.

{¶ 32} R.C. 3127.21(A) provides that "[a] court of this state that has jurisdiction under this chapter to make a child custody determination may decline to exercise its jurisdiction at any time if it determines that it is an inconvenient forum under the circumstances and that a court of another state is a more convenient forum. The issue of inconvenient forum may be raised upon motion of a party, the court's own motion, or at the request of another court." R.C. 3127.21(B) sets forth factors to be considered in determining whether another state is the more appropriate forum.

{¶ 33} Clearly, since the children lived in Texas from February 2012 until the August 2017 hearing, there was a legitimate issue before the trial court concerning whether Texas was the more appropriate forum. However, neither party raised the issue with the magistrate, nor did the magistrate raise the issue on its own motion. Further, there is no showing that Ms. Baker attempted to file any action in Texas. Ms. Baker did, however, make a general allegation in her objections to the magistrate's decision that the trial court lacked subject matter jurisdiction.

**{¶ 34}** Before we can resolve this issue, we must address what is the appropriate standard of review. An appellate court conducts a de novo review of a trial court's determination regarding the existence of subject matter jurisdiction, whether the trial court has or lacks jurisdiction in the first place, because such determination is a matter of law. *Mulatu v. Girsha*, 12th Dist. Clermont No. CA2011–07–051, 2011–Ohio–6226, ¶ 26. In contrast, because the language of R.C. 3127.21 is permissive, an appellate court reviews a trial court's decision to exercise or decline to exercise that jurisdiction on the basis of inconvenient forum under an abuse of discretion standard. *Witt v. Walker*, 2d Dist. Clark No. 2012-CA-58, 2013-Ohio-714, ¶ 28, citing *Walter v. Liu*, 193 Ohio App. 3d 185, 951 N.E.2d 457, ¶ 12 (8th Dist.), citing *In re D.H.*, 8th Dist. Cuyahoga No. 89219, 2007-Ohio-4069.

**{¶ 35}** Clearly, there was continuing jurisdiction which the court elected to exercise. Further, Ms. Baker did not raise the issue of jurisdiction until she objected to the magistrate's decision. And then, she did not make an inconvenient forum argument, but rather argued that the court lacked subject matter jurisdiction. Thus, we cannot say that the trial court abused its discretion in denying the objection regarding jurisdiction since the court actually had subject matter jurisdiction, and since no one raised the inconvenient forum argument.

**{¶ 36}** Accordingly, the second assignment of error is overruled.

## IV. Conclusion

**{¶ 37}** Both of Ms. Baker's assignments of error being overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

FROELICH, J. and HALL, J., concur.

Copies mailed to:

Charles W. Slicer, III
Mark A. Fisher
Hon. Timothy D. Wood