**[Cite as *In re A.G.B.*, 2020-Ohio-3388.]**

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | |
|---|---|
| IN RE: A.G.B. | : |
| | : |
| | : Appellate Case No. 28682 |
| | : |
| | : Trial Court Case No. 2019-3758 |
| | : |
| | : (Appeal from Common Pleas |
| | : Court – Juvenile Division) |
| | : |
| | : |

. . . . . . . . . . .

O P I N I O N

Rendered on the 19th day of June, 2020.

. . . . . . . . . . .

CHARLES M. BLUE, Atty. Reg. No. 0074329, 401 East Stroop Road, Kettering, Ohio
45429
        Attorney for Appellant Grandmother

BRYAN K. PENICK, Atty. Reg. No. 0071489, and KAITLYN C. MEEKS, Atty. Reg. No.
0098949, 1900 Stratacache Tower, 40 N. Main Street, Dayton, Ohio 45423
        Attorneys for Appellee Father

. . . . . . . . . . . .

HALL, J.

{¶ 1} Maternal grandmother ("Grandmother") appeals the juvenile court's granting of Father's motion to dismiss her complaint for custody of A.G.B., a minor child. The court concluded that it did not have jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA). We affirm.

## I. Facts and Procedural History

{¶ 2} Father and Mother were married and living in Virginia when A.G.B. was born in September 2012. In May 2018, possibly because Father and Mother were experiencing marital difficulties or possibly because Father's job as a union carpenter required him to be away from home so much, Mother and A.G.B. moved to Dayton, Ohio, where the child's maternal grandmother lived. Father remained in Virginia. On August 4, 2019, Mother died. Immediately upon learning of her death, Father traveled to Dayton and picked up his son on August 8 to bring him back to Virginia.

{¶ 3} On August 12, Grandmother filed a complaint for legal custody, emergency interim temporary custody, or alternatively, visitation. On August 13, a magistrate granted interim temporary custody to Grandmother. The same day a summons was issued to Father in Virginia, but he was never served. In September 2019, the certified mail came back "unclaimed," and the summons was never reissued.

{¶ 4} When Father returned to Virginia with A.G.B., he tried to enroll the child in school, and the school told him that he had to file for custody. On August 15, Father filed a pro se motion for custody in the Norfolk Juvenile and Domestic Relations District Court, 4th Judicial District of Virginia. The Virginia court appointed a guardian ad litem to conduct an investigation.

{¶ 5} Meanwhile, on August 19 in Ohio, the magistrate held a status-review

hearing at which both parties appeared with counsel. Father's attorney had entered a limited appearance for purposes of attending the hearing. Afterward, the magistrate issued an order saying that the matter would be taken under advisement pending an in-camera interview with the child. The magistrate ordered that the grant of interim temporary custody to Grandmother remain in effect and that Father return the child to her.

{¶ 6} On August 23, Father filed a motion to set aside the Ohio magistrate's order. The juvenile court conducted an in-camera interview with the child. The court then granted Father's motion, concluding that the temporary-custody order should not have been entered because Grandmother had failed to show that the child was at immediate or imminent risk of harm. The court ordered that Father retain legal custody of the child, and the matter was set for trial in December.

{¶ 7} Meanwhile in Virginia, the guardian ad litem completed an investigation of the situation, and the court conducted evidentiary hearings. On October 28, 2019, the Virginia court granted Father sole legal and physical custody of the child.

{¶ 8} Back in Ohio, on November 26, Father filed a motion to dismiss Grandmother's complaint in which he noted that the Virginia court had granted him custody. On December 4, Grandmother filed a motion to continue the trial "due to recent discovery of the Virginia litigation." The court granted the motion and set a trial date for the following February. Grandmother did not file a response to Father's motion to dismiss.

{¶ 9} On December 16, the juvenile court granted Father's motion to dismiss and dismissed Grandmother's complaint. The court concluded that, under the UCCJEA it lacked "home state" jurisdiction over the custody proceeding. The court further concluded

that even if it had jurisdiction, it would decline to exercise that jurisdiction in favor of the Virginia court, because Virginia was a more convenient forum.

{¶ 10} Grandmother appeals from the dismissal order.

## II. Analysis

{¶ 11} Grandmother's sole assignment of error argues that the juvenile court erred by dismissing her complaint because the court incorrectly concluded that it did not have jurisdiction under the UCCJEA and that Virginia was a more convenient forum.

## A. Jurisdiction under the UCCJEA

{¶ 12} Grandmother first argues that the juvenile court incorrectly concluded that it lacked "home state" jurisdiction under the UCCJEA to make an initial custody determination. Grandmother contends that Ohio was the "home state" of the child for jurisdictional purposes.

{¶ 13} "An appellate court conducts a de novo review of a trial court's determination regarding the existence of subject matter jurisdiction, whether the trial court has or lacks jurisdiction in the first place, because such determination is a matter of law." (Citation omitted.) *Baker v. Baker*, 2d Dist. Montgomery No. 27850, 2018-Ohio-3065, ¶ 34. *Accord In re H.P.*, 8th Dist. Cuyahoga No. 101781, 2015-Ohio-1309, ¶ 15 ("An appellate court * * * reviews issues relating to subject matter jurisdiction de novo, as such a determination is a matter of law.").

{¶ 14} "The purpose of the UCCJEA is to help resolve interstate custody disputes and to avoid jurisdictional competition with courts of other jurisdictions in custody matters." *Lafi v. Lafi*, 2d Dist. Miami No. 2007 CA 37, 2008-Ohio-1871, ¶ 9, citing *State ex rel. Morenz v. Kerr*, 104 Ohio St.3d 148, 2004-Ohio-6208, 818 N.E.2d 1162, ¶ 16. Both

Ohio and Virginia have adopted the UCCJEA. In Ohio, the Act is codified in R.C. Chapter 3127.

{¶ 15} A juvenile court is authorized to exercise jurisdiction in child-custody matters in accordance with R.C. Chapter 3127. *See* R.C. 2151.23(F)(1). "R.C. Chapter 3127 sets forth a series of standards and definitions for determining when an Ohio court has jurisdiction, as opposed to a court of another state, to issue a child custody decision." *In re H.P.* at ¶ 15. The UCCJEA gives " 'jurisdictional priority * * * to the home state.' " (Citation omitted.) *Rosen v. Celebrezze*, 117 Ohio St.3d 241, 2008-Ohio-853, 883 N.E.2d 420, ¶ 21, quoting Annotation, *Construction and Operation of Uniform Child Custody Jurisdiction and Enforcement Act*, 100 A.L.R.5th 1, 20, Section 2[b] (2002). R.C. 3127.15(A) "is the exclusive jurisdictional basis for making a child custody determination by a court of this state." R.C. 3127.15(B).

{¶ 16} "[T]he UCCJEA, as codified in Ohio, provides four types of initial child-custody jurisdiction: home-state jurisdiction, significant-connection jurisdiction, jurisdiction because of declination of jurisdiction, and default jurisdiction." *Rosen* at ¶ 31, citing R.C. 3127.15(A)(1)-(4).

{¶ 17} A court in Ohio has home-state jurisdiction to make an initial decision in a child-custody proceeding, under R.C. 3127.15(A)(1), if Ohio either (i) "is the home state of the child on the date of the commencement of the proceeding" or (ii) "was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state." R.C. 3127.01(B)(7) defines "home state" as "the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months

immediately preceding the commencement of a child custody proceeding * * *. A period of temporary absence of any of them is counted as part of the six-month or other period." R.C. 3127.01(B)(13) defines "person acting as a parent" as a person who "has physical custody of the child or has had physical custody for a period of six consecutive months, including any temporary absence from the child, within one year immediately before the commencement of a child custody proceeding" and "has been awarded legal custody by a court or claims a right to legal custody under the law of this state."

{¶ 18} Although the definition of "home state" says "at least six consecutive months immediately preceding the commencement" of a child-custody proceeding, the Ohio Supreme Court has said that under the UCCJEA, for purposes of determining initial jurisdiction, the six-consecutive-month period is not limited to the six months immediately preceding the commencement of a child-custody proceeding. The time period can also occur "within" the six months before the commencement of the proceeding. *See Rosen* at ¶ 50 (the "home state" definition and the initial-custody provisions "confer home-state jurisdiction on the state that was the home state within six months of the commencement of the child-custody proceeding"). "Put another way, a child's home state is where the child lived for six consecutive months ending within the six months before the child custody proceeding was commenced." *In re H.P.*, 8th Dist. Cuyahoga No. 101781, 2015-Ohio-1309, at ¶ 20, citing *Rosen* at ¶ 41-42 (granting the father's writ of prohibition to prevent an Ohio judge from proceeding on the custody action that mother filed four months after moving to Ohio with the children, and holding that West Virginia was the children's "home state" because they had lived in Ohio for only four months but had lived in West Virginia for six consecutive months "within" the six-month period before the

commencement of the mother's custody action).

**{¶ 19}** Here, Grandmother argues that Ohio is the child's home state. She says that since Mother and A.G.B. moved here in May 2018, neither left the state for more than a few days. Grandmother argues that Father's taking the child back to Virginia effected at most the child's temporary absence from Ohio. Therefore, Ohio has home-state jurisdiction under the UCCJEA.

**{¶ 20}** It is true that Ohio was the last state that A.G.B. lived in for more than six consecutive months within the six months before the child custody proceeding was commenced. But that is not sufficient. The extended home-state jurisdiction provision in the second part of R.C. 3127.15(A)(1) states "or was the home state of the child within six months before the commencement of the proceeding *and the child is absent from this state but a parent or person acting as a parent continues to live in this state.*" (Emphasis added.) Ohio "was" the child's home state, but now the child is "absent from [Ohio]" and there is no longer "a parent or person acting as a parent continu[ing] to live in [Ohio]."

**{¶ 21}** This case presents a unique situation: the parents, still married, lived in different states, and the parent who had de facto custody of the child died. The comments to the 1997 UCCJEA say that the Act bases jurisdiction on the parent-and-child or person-acting-as-a-parent-and-child relationship, without regard to other potential seekers of custody or visitation. Accordingly, the comments state that extended home-state jurisdiction exists when the child has been removed from the state by a person seeking the child's custody and a parent or a person acting as a parent continues to reside in the home state. Thus, for a court to have extended home-state jurisdiction, a parent or person acting as parent must remain in the state. Stated differently, if Father had taken the child

to Virginia but Mother still lived in Ohio, Ohio would be a home state for purposes of jurisdiction to determine custody. But when a de facto residential parent dies, that parent no longer lives in the state, and the parent who resides outside the state becomes the child's de facto residential parent and the de jure custodian. Under Ohio law, this sole remaining parent retains this custody status unless or until the parent is determined to be unsuitable to be custodian.[1]

{¶ 22} When the child-custody proceeding was commenced on August 12, 2019 (the date that Grandmother filed the complaint), Ohio was not the child's home state. Ohio was the child's home state only until August 4 (the date that Mother died). On that date, the child ceased to live in Ohio with a parent (or a person acting as a parent), so the six-consecutive-month period in the "home state" definition ended. That Mother and A.G.B. lived here for almost six months was insufficient. *See Rosen*, 117 Ohio St.3d 241, 2008-Ohio-853, 883 N.E.2d 420, at ¶ 32. We conclude that the juvenile court did not have home-state jurisdiction. *See In re H.P.*, 8th Dist. Cuyahoga No. 101781, 2015-Ohio-1309, at ¶ 20.

{¶ 23} If the Ohio court does have jurisdiction, it is likely sufficient-connection jurisdiction under R.C. 3127.15(A)(2). But the court concluded that it would decline to exercise jurisdiction in favor of the Virginia court as a more convenient forum. We see no error with this conclusion.

---

[1]   A parent "may be denied custody only if a preponderance of the evidence indicates abandonment, contractual relinquishment of custody, total inability to provide care or support, or that the parent is otherwise unsuitable[,] that is, that an award of custody would be detrimental to the child." *In re Perales*, 52 Ohio St.2d 89, 98, 369 N.E.2d 1047 (1977). Grandmother did not allege in the complaint that Father was unsuitable, so it would appear that her claim for custody was insufficiently pleaded and could have been dismissed on that basis.

{¶ 24} Under the UCCJEA, a court that has jurisdiction may decline to exercise its jurisdiction if it determines that it is an inconvenient forum and that a court of another state is more convenient. *See* R.C. 3127.21(A). "A trial court exercises its discretion in determining whether it may exercise jurisdiction over a case under the UCCJEA * * *." (Citation omitted.) *In re M.T.*, 178 Ohio App.3d 546, 2008-Ohio-5174, 899 N.E.2d 162, ¶ 29 (2d Dist.). We review this type of decision for an abuse-of-discretion. *Baker*, 2d Dist. Montgomery No. 27850, 2018-Ohio-3065, at ¶ 34 ("because the language of R.C. 3127.21 is permissive, an appellate court reviews a trial court's decision to exercise or decline to exercise that jurisdiction on the basis of inconvenient forum under an abuse of discretion standard").

{¶ 25} R.C. 3127.21(B) states that "[b]efore determining whether it is an inconvenient forum, a court of this state shall consider whether it is appropriate for a court of another state to exercise jurisdiction." To do that, a court must consider all relevant factors, including:

(1) Whether domestic violence has occurred and is likely to continue in the future and which state could best protect the parties and the child;

(2) The length of time the child has resided outside this state;

(3) The distance between the court in this state and the court in the state that would assume jurisdiction;

(4) The relative financial circumstances of the parties;

(5) Any agreement of the parties as to which state should assume jurisdiction;

(6) The nature and location of the evidence required to resolve the pending

litigation, including the testimony of the child;

(7) The ability of the court of each state to decide the issue expeditiously and the procedures necessary to present the evidence;

(8) The familiarity of the court of each state with the facts and issues in the pending litigation.

R.C. 3127.21(B).

{¶ 26} The juvenile court here examined each of these factors and concluded that Virginia was a more appropriate forum. The court found no evidence of any domestic violence. The court found that the child previously lived in Virginia with Father and Mother, before moving to Ohio with Mother about 18 months earlier. The Virginia court had already made a custody decision and, before doing so, it conducted evidentiary hearings and had a guardian ad litem investigate. The court noted that it and the Virginia court had communicated about this matter and that the Virginia court said that it wanted to continue exercising jurisdiction. The court's conclusion that Virginia was more convenient was eminently reasonable.

### III. Conclusion

{¶ 27} The juvenile court does not have home-state jurisdiction under the UCCJEA. The sole assignment of error is overruled. The juvenile court's judgment is affirmed.

. . . . . . . . . . . . .

TUCKER, P.J. and DONOVAN, J., concur.

Copies sent to:

Charles M. Blue
Bryan K. Penick
Kaitlyn C. Meeks
Jennifer Getty, GAL
Hon. Helen Wallace