[Cite as *In re M.R.F.-C.*, 2020-Ohio-4400.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

IN RE:

M.R.F.-C. & E.J.F.-C.

:
:
:     Appellate Case No. 28683
:
:     Trial Court Case Nos. 2008-0113
:                   2008-0116
:
:     (Appeal from Common Pleas
:     Court – Juvenile Division)
:

. . . . . . . . . . .

O P I N I O N

Rendered on the 11th day of September, 2020.

. . . . . . . . . . .

MATTHEW C. SORG, Atty. Reg. No. 0062971 & EBONY D. DAVENPORT, Atty. Reg. No. 0098041, 40 North Main Street, Suite 2700, Dayton, Ohio 45423

      Attorneys for Mother

JAMES R. KIRKLAND, Atty. Reg. No. 0009731, 10532 Success Lane, Dayton, Ohio 45458

      Attorney for Father

. . . . . . . . . . . . .

FROELICH, J.

**{¶ 1}** Mother appeals from judgments of the Montgomery County Court of Common Pleas, Juvenile Division, which concluded that it lacked subject matter jurisdiction over the parties' child custody cases. Mother claims that the trial court erred in concluding that it did not have exclusive continuing jurisdiction as the home state, and that it erred in failing to hold a due process hearing before declining jurisdiction. For the following reasons, the trial court's judgments will be affirmed.

## I. Procedural History

**{¶ 2}** Mother and Father, who have never married, have twin sons born in January 2007. The couple separated in October or November 2007, and Father moved to Grand Rapids, Michigan, where his parents lived. In January 2008, Father filed a petition in the Montgomery County juvenile court to establish parenting time and child support. The trial court entered orders establishing visitation and child support amounts for Father.

**{¶ 3}** In August 2011, Mother filed a motion to terminate child support in the juvenile court. She indicated that she and Father had been working toward building a joint family home for their children and had recently purchased a house together in Grand Rapids. The court granted Mother's motion. The parties took no further action in the case for several years.

**{¶ 4}** On September 23, 2019, Father filed a motion in Montgomery County to transfer the case to Michigan. Father indicated that Mother had taken the children to Ohio several times in August and early September, and the last trip had caused the boys to miss four days of school. Father further stated that, on September 7, Mother "removed the children from the home and stated that she was taking them to Ohio with her." Father

asked that the case be transferred to Michigan, the residence of both parties and where the boys had lived most of their lives. Father further asked that any filing by Mother be stayed. The trial court denied the motion "as no case [was] pending" in this court to transfer.

{¶ 5} Father then filed a motion in the Kent County Circuit Court in Michigan, asking it to accept jurisdiction. On October 10, Mother filed a motion in Montgomery County for reallocation of parental rights and responsibilities. The magistrate in Ohio scheduled a hearing for January 7, 2020.

{¶ 6} On October 22, 2019, the Michigan court granted Father's motion and accepted jurisdiction over the parties' custody matter. The Michigan court's order indicated that it had considered Father's motion to accept jurisdiction and "argument made by Plaintiff and Defendant's counsel on October 11, 2019." The Michigan court further stated that it had consulted with the magistrate in the Montgomery County juvenile court pursuant to the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), and both courts agreed that the Kent County court was the more appropriate forum due to the family's residing there since 2010.

{¶ 7} A week later, Mother filed a motion in the Montgomery County court, asking it to retain jurisdiction and for a hearing. Mother argued that the Ohio court had exclusive, continuing jurisdiction until the Ohio court or the court of another state determined that a parent or the children did not "presently reside" in Ohio. Mother asserted that she then lived in Ohio and had for the past month.

{¶ 8} The magistrate denied Mother's motion. The magistrate found that, when Mother filed her motion to reallocate parental rights and responsibilities, neither the

parties nor the children resided in Ohio within the meaning of R.C. 3127.16. The magistrate relied on *Slaughter v. Slaughter*, 10th Dist. Franklin No. 11AP-997, 2012-Ohio-3973, which held that a court's exclusive continuing jurisdiction under R.C. 3127.16 ceases when the parents and children no longer reside in the original decree state. The magistrate found that the parties and their sons had resided Michigan since 2010 and that Mother and the boys were in Ohio for only one month prior to her filing her motion. The magistrate concluded that it lacked exclusive jurisdiction, that Michigan was the children's home state, and that the Ohio court lacked jurisdiction to entertain the child custody proceeding.

{¶ 9} Mother filed objections, and Father opposed the objections. The trial court succinctly summarized the parties' arguments, stating:

> * * * [Mother] asserts that because she returned to the State of Ohio with the children, and the most recent order (from 2008) was issued in Ohio, Ohio has not lost its exclusive continuing jurisdiction to modify its own order. [Mother] also argues that the Magistrate erred in his interpretation of *Slaughter v. Slaughter*, 2012-Ohio-3973 (10th Dist.). In conclusion, [Mother] requests the Court to grant her objections and set the matter for a hearing on her Request for Modification of Parenting Time under the exclusive, continuing jurisdiction of this Court.
>
> * * * [Father] asserts that Michigan is the child's "home state" pursuant to R.C. 3127 as the parties have fully lived in the state of Michigan for approximately 9 years, having Michigan driver's licenses, registering to vote in Michigan, utilizing Michigan school systems, and with Mother owning

1/2 of the family home in Michigan. Therefore, [Father] argues that Mother's move [to] Ohio in September 2019, a month before filing her motion, does not decide domicile or residency, and none of the parties "reside" in the state of Ohio within the meaning of R.C. 3127.16.

{¶ 10} On December 20, 2019, the trial court overruled Mother's objections. The trial court concluded that, although Ohio was the children's "home state" when the initial custody proceedings occurred in 2008, Ohio was no longer the children's home state, "as none of the parties or children have resided in this state for a period of 6 months prior to filing of Mother's modification action. As such, this Court no longer has exclusive jurisdiction over this matter." The trial court noted that some Ohio appellate districts have held that a court does not lose its "continuing" jurisdiction even if it loses its "exclusive" jurisdiction. The trial court distinguished those cases, stating that the "dispositive consideration" appeared to be the lack of another state's court's attempting to exercise jurisdiction. In this case, the Michigan court agreed to accept jurisdiction, and the trial court concluded that the Michigan court could properly exercise jurisdiction and was the more appropriate forum.

{¶ 11} Finally, citing *State ex rel. Seaton v. Holmes*, 100 Ohio St.3d 265, 2003-Ohio-5897, 798 N.E.2d 375, the trial court noted that the Ohio Supreme Court had held, when interpreting the previous UCCJA and the Parental Kidnapping Prevention Act, that a party who leaves the jurisdiction, establishes residency elsewhere, and then attempts to reestablish residence in the original state fails to satisfy the statutory residency requirement. The trial court thus held that subject matter jurisdiction was lacking. The court denied Mother's motion to retain jurisdiction, dismissed Mother's motion for

reallocation of parental rights, and vacated the scheduled hearing.

{¶ 12} Mother appeals, raising two assignments of error, which state:

1.   The trial court erred in finding that Ohio lacked continuing jurisdiction as the "home state."

2.   The trial court erred in failing to hold a due process hearing before declining jurisdiction as required by the UCCJEA.

{¶ 13} We review de novo review the trial court's determination regarding the existence of subject matter jurisdiction, because such a determination is a question of law. *In re A.G.B.*, 2d Dist. Montgomery No. 28682, 2020-Ohio-3388, ¶ 13; *Baker v. Baker*, 2d Dist. Montgomery No. 27850, 2018-Ohio-3065, ¶ 34.

## II. Jurisdiction under UCCJEA

{¶ 14} "The purpose of the UCCJEA is to help resolve interstate custody disputes and to avoid jurisdictional competition with courts of other jurisdictions in custody matters." *Lafi v. Lafi*, 2d Dist. Miami No. 2007 CA 37, 2008-Ohio-1871, ¶ 9, citing *State ex rel. Morenz v. Kerr*, 104 Ohio St.3d 148, 2004-Ohio-6208, 818 N.E.2d 1162, ¶ 16.   In Ohio, the Act is codified in R.C. Chapter 3127.

{¶ 15} The UCCJEA replaced the Uniform Child Custody Jurisdiction Act ("UCCJA"), which was drafted in 1968 and adopted by Ohio in 1977.   *See Justis v. Justis*, 81 Ohio St.3d 312, 314, 691 N.E.2d 264 (1998), citing former R.C. 3109.21 to 3109.37. As with the later UCCJEA, "[a] purpose of the UCCJA was 'to avoid jurisdictional competition and conflict with courts of other jurisdictions' in custody matters."   (Citation omitted.)   *Rosen v. Celebrezze*, 117 Ohio St.3d 241, 2008-Ohio-853, 883 N.E.2d 420, ¶ 20.

{¶ 16} "To bolster the effectiveness of the UCCJA," Congress passed the Parental Kidnapping Prevention Act ("PKPA"), 28 U.S.C. 1738A, in 1980, which mandated that states "afford full faith and credit to valid child custody orders of another state court." *Justis* at 315; *State ex rel. Morenz* at ¶ 16. The Ohio Supreme Court held that when the Ohio version of the UCCJA conflicted with the PKPA, the PKPA prevailed. *State ex rel. Seaton*, 100 Ohio St.3d 265, 2003-Ohio-5897, 798 N.E.2d 375, at ¶ 16.

{¶ 17} Under the UCCJA and the PKPA, a state court that rendered an initial custody decree had "exclusive jurisdiction over the ongoing custody dispute *if that state has continuing jurisdiction*." (Emphasis sic.) *State ex rel. Seaton* at ¶ 9, quoting *Justis* at syllabus. The PKPA provides that the state court that made the initial child custody or visitation determination retains jurisdiction as long as that court has jurisdiction under its state's laws and "such State *remains the residence* of the child or of any contestant." (Emphasis added.) 28 U.S.C. 1738A(d).

{¶ 18} In *State ex rel. Seaton*, the Ohio Supreme Court addressed the Ohio court's continuing jurisdiction under the UCCJA and PKPA when a family relocated from Ohio and the father subsequently sought enforcement of a decree in Ohio, where the original divorce decree had been rendered. In that case, the Seatons resided in Ohio with their child when divorce proceedings were initiated. In April 2002, a month before the trial court issued a divorce decree, all of the Seatons relocated to Missouri, with the mother and child residing separately from the father. In August, the mother registered the Ohio divorce decree, which included a shared parenting plan, in Missouri. In September, the father filed a contempt motion in Ohio and sought termination of the shared parenting plan. The mother moved to dismiss the motion for lack of jurisdiction. The mother also

filed an original action in Ohio seeking a writ of prohibition to prevent the trial judge from proceeding on the post-divorce motion.

{¶ 19} The Ohio Supreme Court concluded that the mother was entitled to the writ of prohibition. The court reasoned:

Ohio was the residence of both parents and the child when they agreed to terms that were subsequently incorporated into the original divorce decree. But all of them moved to Missouri. Although [Father] later moved back to Ohio, he did not thereby confer continuing jurisdiction on the Ohio court. His status as an Ohio resident did not "continue unchanged" from the issuance of the divorce decree until the present. In fact, according to [Mother's] uncontroverted affidavit, [Father] has expressed his intent to continue residence in Missouri and doubts the likelihood of further proceedings in Ohio.

Therefore, under the PKPA, Ohio lacks jurisdiction over [Father's] postdecree motions. In other words, "[i]f the party attempting to 'continue' jurisdiction in the original court leaves that jurisdiction, establishes residence elsewhere, and subsequently attempts to reestablish residence in the original court, then that party does not satisfy the requirement of subsection (d) that the state or district 'remains the residence' of that party."

State ex rel. Seaton, 100 Ohio St.3d 265, 2003-Ohio-5897, 798 N.E.2d 375, at ¶ 14-15.

{¶ 20} The Seaton Court further concluded that the UCCJA did not require a different conclusion regarding the Ohio court's jurisdiction. It noted that, comparably to the PKPA, the UCCJA required that "a parent or person acting as parent continues to live

in this state" before an Ohio court could exercise jurisdiction. (Emphasis sic.) *Id.* at ¶ 16, quoting former R.C. 3109.22(A)(1). Regardless, to the extent that the UCCJA conflicted with the PKPA, the PKPA prevailed. *Id.*

{¶ 21} In 1997, the National Conference of Commissioners on Uniform State Laws promulgated the UCCJEA to replace the UCCJA. This change was precipitated by a lack of uniformity among states in the adoption of the UCCJA and inconsistent decisions about the UCCJA by state courts. *See Rosen*, 117 Ohio St.3d 241, 2008-Ohio-853, 883 N.E.2d 420, at ¶ 20, citing Uniform Child Custody Jurisdiction and Enforcement Act, Prefatory Note (1997), 9 Uniform Laws Ann. 649, 650. *See also* Levy & McCarthy, *A Critique of the Proposed Uniform Child Custody Jurisdiction and Enforcement Act,* 15 J. Amer. Acad. of Matrimonial Lawyers 149 (1998) ("[D]ifferent interpretations of the Act have resulted in a hodgepodge of state interpretation of the UCCJA which has created confusion, often worse than before the UCCJA was enacted.") "The most significant change[ ] the UCCJEA makes to the UCCJA is giving jurisdictional priority and exclusive continuing jurisdiction to the home state." *Rosen* at ¶ 21.

{¶ 22} R.C. 3127.15(A) sets forth four alternative bases for an Ohio court to make an initial determination in a child custody proceeding: home-state jurisdiction, significant-connection jurisdiction, jurisdiction because of declination of jurisdiction, and default jurisdiction. *Id.* at ¶ 31, citing R.C. 3127.15(A)(1)-(4); *In re A.G.B.*, 2d Dist. Montgomery No. 28682, 2020-Ohio-3388, at ¶ 16. "Home state" is defined as

the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately preceding the commencement of a child custody proceeding and, if a child is less than six

months old, the state in which the child lived from birth with any of them. A period of temporary absence of any of them is counted as part of the six-month or other period.

R.C. 3127.01(B)(7). Under R.C. 3127.01(B)(5), a child custody action is "commenced" by the filing of the first pleading in a proceeding.

{¶ 23} It is undisputed that, in 2008, Ohio was the boys' "home state" under R.C. 3127.01, and the trial court properly made the initial child custody determination. As a result of that determination, under the UCCJEA, the trial court's continuing jurisdiction over the child custody proceeding was exclusive, unless the Ohio court lost its exclusive jurisdiction.

{¶ 24} An Ohio's court's exclusive continuing jurisdiction is governed by R.C. 3127.16, which reads:

Except as otherwise provided in section 3127.18 of the Revised Code [emergency jurisdiction], a court of this state that has made a child custody determination consistent with section 3127.15 or 3127.17 of the Revised Code has exclusive, continuing jurisdiction over the determination *until the court or a court of another state determines that the child, the child's parents, and any person acting as a parent do not presently reside in this state.*

(Emphasis added.) In enacting R.C. 3217.16, Ohio did not adopt Section 202 of the UCCJEA in its entirety. Rather, R.C. 3127.16 incorporated only subsection (a)(2) of that section.[1]

---

[1] Section 202(a)(1) provided: "Except as otherwise provided in Section 204, a court of

**{¶ 25}** The comments to the UCCJEA discussed the purpose of Section 202:

This is a new section addressing continuing jurisdiction. Continuing jurisdiction was not specifically addressed in the UCCJA. Its absence caused considerable confusion, particularly because the PKPA, § 1738(d), requires other States to give Full Faith and Credit to custody determinations made by the original decree State pursuant to the decree State's continuing jurisdiction so long as that State has jurisdiction under its own law and remains the residence of the child or any contestant.

* * *

2. Continuing jurisdiction is lost when the child, the child's parents, and any person acting as a parent no longer reside in the original decree State. The exact language of subparagraph (a)(2) was the subject of considerable debate.[2] Ultimately the Conference settled on the phrase that "a court of this State or a court of another State determines that the child, the child's parents, and any person acting as a parent do not presently reside in this

---

this State which has made a child-custody determination consistent with Section 201 or 203 has exclusive, continuing jurisdiction over the determination until:
(1) a court of this State determines that neither the child, nor the child and one parent, nor the child and a person acting as a parent have a significant connection with this State and that substantial evidence is no longer available in this State concerning the child's care, protection, training, and personal relationships[.]"

[2] Section 202(a)(2) of the draft originally presented at the summer 1997 meeting of the National Conference of Commissioners on Uniform State Laws mimicked the language of the PKPA. It stated that the state court that made the original custody determination would have "exclusive, continuing jurisdiction over the determination until * * * a court of this State or a court of another State determines that this State is no longer the residence of the child, a parent, or any person acting as a parent."

State" to determine when the exclusive, continuing jurisdiction of a State ended. The phrase is meant to be identical in meaning to the language of the PKPA which provides that full faith and credit is to be given to custody determinations made by a State in the exercise of its continuing jurisdiction when that "State remains the residence of ... ." The phrase is also the equivalent of the language "continues to reside" which occurs in UIFSA [Uniform Interstate Family Support Act] § 205(a)(1) to determine the exclusive, continuing jurisdiction of the State that made a support order. The phrase "remains the residence of" in the PKPA has been the subject of conflicting case law. It is the intention of this Act that paragraph (a)(2) of this section means that the named persons no longer continue to actually live within the State. Thus, unless a modification proceeding has been commenced, when the child, the parents, and all persons acting as parents physically leave the State to live elsewhere, the exclusive, continuing jurisdiction ceases.

The phrase "do not presently reside" is not used in the sense of a technical domicile. The fact that the original determination State still considers one parent a domiciliary does not prevent it from losing exclusive, continuing jurisdiction after the child, the parents, and all persons acting as parents have moved from the State.

* * *

Exclusive, continuing jurisdiction is not reestablished if, after the child, the parents, and all persons acting as parents leave the State, the

non-custodial parent returns. As subsection (b) provides, once a State has lost exclusive, continuing jurisdiction, it can modify its own determination only if it has jurisdiction under the standards of Section 201 [Initial child-custody determination]. If another State acquires exclusive continuing jurisdiction under this section, then its orders cannot be modified even if this State has once again become the home State of the child.

(Footnote added.) UCCJEA, Comment to Section 202.

{¶ 26} As stated above, the trial court concluded that, although Ohio was the children's "home state" when the initial custody proceedings occurred in 2008, Ohio was no longer the children's home state due to the family's relocation to Michigan and residing there as a family for nine years. The court further concluded, citing *State ex rel. Seaton*, 100 Ohio St.3d 265, 2003-Ohio-5897, 798 N.E.2d 375, that Mother did not satisfy Ohio's residency requirement when she attempted to reestablish residence in Ohio shortly before filing her motion.

{¶ 27} Mother claims that "the duration of the child's out of state residency during the pendency of a child custody action is irrelevant to jurisdictional analysis." She bases her argument on *State ex rel. M.L. v. O'Malley*, 144 Ohio St.3d 553, 2015-Ohio-4855, 45 N.E.3d 971, and *C.H. v. O'Malley*, 158 Ohio St.3d 107, 2019-Ohio-4382, 140 N.E.3d 589.

{¶ 28} In *State ex rel. M.L.*, the child was born in Ohio to unmarried parents, and the father filed an application to determine custody in Ohio. The mother was never served, however, and she moved with the child to New Jersey. The Ohio court nevertheless granted custody to the father, and in December 2011, the child was placed in the father's custody pursuant to the order. The order was reversed on appeal due to

lack of service, but the case was not dismissed. It appears that the child was returned to the mother. In July 2012, the father filed a new application under a new case number, and the mother sought dismissal due to a pending action in New Jersey. The Ohio juvenile court denied the mother's motion. The mother then sought a writ of prohibition on the ground that another state, New Jersey, was the child's home state under the UCCJEA. The next day, the New Jersey court determined that Ohio was the home state.

{¶ 29} The Supreme Court held that the Ohio court did not patently and unambiguously lack jurisdiction over the child custody proceeding. The court found that Ohio was the child's home state when the father filed his first action, which had not been dismissed. Because Ohio appeared to have been the home state of the child on the date of the commencement of the proceeding, the Ohio court had jurisdiction under R.C. 3127.15(A)(1) to determine custody. The supreme court further noted that the New Jersey court had declined jurisdiction and determined that Ohio was the more appropriate forum, which provided a basis for jurisdiction under R.C. 3127.15(A)(3).

{¶ 30} The Ohio Supreme Court distinguished *State ex rel. M.L.* in *C.H. v. O'Malley*. In *C.H.*, the child was born in 2005 in Arizona and was adopted by her maternal grandmother, C.H., in 2017, also in Arizona. In June 2017, the child's biological mother drove him to the Ohio home of the man who claimed to be the biological father. Two months later, in August, the father filed an application to determine custody in Cuyahoga County, Ohio. He also filed a motion for emergency temporary custody, which was granted. The father did not inform the court that C.H. had adopted the child. C.H. later informed the court of the adoption order and challenged the Ohio court's jurisdiction. After the trial court rejected C.H.'s jurisdictional challenge, C.H. brought an action for a

writ of prohibition. On September 23, 2018, the father voluntarily dismissed without prejudice his application to determine custody, and six minutes later, he filed a new application under the same case number.

{¶ 31} Addressing C.H.'s request for a writ of prohibition, the Ohio Supreme Court initially concluded that the Ohio court did not have home state jurisdiction when the father filed his August 2017 application. However, applying the voluntary dismissal rule under Civ.R. 41(A)(1)(a), the supreme court held that father's first petition was a legal nullity, and therefore Ohio was the child's home state when the September 2018 petition was filed. The supreme court distinguished *State ex. rel. M.L.*, stating:

> Our decision to deny a writ of prohibition in *M.L.* was squarely based on the fact that the first application was never dismissed. By contrast, [father] did dismiss his first application under Civ.R. 41(A)(1)(a), effectively making the original filing a nullity. C.H. has cited no statutory authority for the proposition that when more than one child-custody action is filed, the commencement date of the first child-custody action continues to govern the home-state-jurisdiction analysis after that application has been voluntarily dismissed and a second application filed.

*C.H.* at ¶ 25.

{¶ 32} Mother argues that, like in *State ex rel. M.L.*, the child custody proceeding was initiated in 2008 in Ohio, and the Ohio court continued to have exclusive jurisdiction because no other custody motion or action was initiated prior to 2019. Mother states that the Ohio court's denial of Father's motion to transfer preserved Ohio's jurisdiction over the matter. Mother asserts, citing *C.H.*, that the family's relocation during the pendency

of the action in Ohio was "irrelevant" and, because Mother and the children resided in Ohio when Mother filed her October 2019 motion, the Montgomery County juvenile court continued to have exclusive jurisdiction.

{¶ 33} We disagree that *State ex rel. M.L.* and *C.H.* are dispositive of the issue before us. Significantly, both cases concerned whether the Ohio court had jurisdiction to make an initial child custody determination under R.C. 3217.15. The central issue was whether Ohio was the home state when the proceeding was filed in Ohio. In *State ex rel. M.L.*, the Ohio court had jurisdiction over the proceeding because Ohio was the home state when the first proceeding, which was filed in Ohio and never dismissed, was filed. In contrast, in *C.H.*, the first Ohio proceeding was disregarded due to the voluntary dismissal, and the Ohio court had jurisdiction over the refiled proceeding because it was the home state when that proceeding was filed. Neither case concerned circumstances where the child, the child's parents, and any person acting as a parent no longer resided in Ohio, nor did either case address the exclusive continuing jurisdiction of the court under R.C. 3217.16.

{¶ 34} We agree with Mother that home-state jurisdiction is determined when an action is "commenced," and that the parties' relocation to another state during the pendency of the proceeding does not eliminate that state's jurisdiction to resolve the pending custody matter. *See C.H.* at ¶ 13; *Mulatu v. Girsha*, 12th Dist. Clermont No. CA2011-07-051, 2011-Ohio-6226, ¶ 44. It does not follow, however, that the parties' relocation *after the child custody determination has been made* is irrelevant to the court's exclusive continuing jurisdiction.

{¶ 35} Rather, we conclude that the trial court's consideration of the family's long-

term residence in Michigan was appropriate in determining whether the trial court retained exclusive continuing jurisdiction over the cases before us. Although the language of R.C. 3127.16 is not identical to the language in the PKPA, we interpret R.C. 3127.16 to mean that an Ohio court loses its exclusive jurisdiction once the parents and child no longer "presently reside" in Ohio.

{¶ 36} In this case, the initial custody proceeding was commenced in Ohio in 2008. The trial court made a child custody determination, and no further action was taken by the parties between the 2011 motion to terminate child support and the 2019 motions. Mother, Father, and their sons moved to Michigan, and Mother and Father lived together and jointly raised their children in Michigan for nearly a decade. The trial court properly found that neither the parents nor the children resided in Ohio during that time and, as a result, the Montgomery County juvenile court lost its exclusive continuing jurisdiction. We need not reach a different conclusion simply because the trial court made this determination after Mother and the children returned to Ohio and Mother sought a modification of the original judgment.

{¶ 37} Moreover, the trial court did not "preserv[e] Ohio's jurisdiction" when it denied Father's motion to transfer the cases to Michigan, as Mother suggests. Rather, the trial court denied the motions because no case was pending in the court to transfer. Upon the filing of Mother's 2019 motion to retain jurisdiction, the trial court properly considered anew whether it had exclusive continuing jurisdiction over Mother's motion seeking a modification of the Ohio child custody order.

{¶ 38} Mother's first assignment of error is overruled.

{¶ 39} Mother further claims that the trial court nevertheless had continuing

jurisdiction and erred in determining that Michigan was the more appropriate forum without holding a hearing and considering statutory factors.

{¶ 40} R.C. 3127.21 permits a court with jurisdiction under Ohio's UCCJEA to decline jurisdiction if it determines that it is an inconvenient forum under the circumstances and that a court of another state is a more convenient forum. Before making such a determination, the court must allow the parties to "submit information" and must consider all relevant factors, including:

(1) Whether domestic violence has occurred and is likely to continue in the future and which state could best protect the parties and the child;

(2) The length of time the child has resided outside this state;

(3) The distance between the court in this state and the court in the state that would assume jurisdiction;

(4) The relative financial circumstances of the parties;

(5) Any agreement of the parties as to which state should assume jurisdiction;

(6) The nature and location of the evidence required to resolve the pending litigation, including the testimony of the child;

(7) The ability of the court of each state to decide the issue expeditiously and the procedures necessary to present the evidence;

(8) The familiarity of the court of each state with the facts and issues in the pending litigation.

R.C. 3127.21(B).

{¶ 41} We note that the UCCJEA "is premised on the assumption that sister state

courts will communicate with one another." *In re M.M.V.*, 2020 COA 94, 2020 WL 3088847, ¶ 33 (Colo. App.), citing *Saavedra v. Schmidt*, 96 S.W.3d 533, 547-48 (Tex.App.2002). *See* R.C. 3217.09.

> Inter-court communication facilitates an understanding between sister states regarding whether the issuing state has lost jurisdiction * * * or declined to exercise jurisdiction in favor of a more convenient forum * * *. Such communication alerts the issuing state to a potential loss of exclusive continuing jurisdiction, based on residence, before the new state assumes jurisdiction to modify the issuing state's child custody order. It also alerts the new state to any pending actions in the issuing state and helps to develop a factual record in the matter of jurisdiction.

*Brandt v. Brandt*, 2012 CO 3, 268 P.3d 406, ¶ 34.

{¶ 42} We find no fault with the trial court's failure to employ the analysis set forth in R.C. 3127.21 under the circumstances here. The record reflects not only that Ohio no longer had exclusive jurisdiction, but that Michigan was the children's home state in October 2019. The record further demonstrates that the Ohio and Michigan courts communicated regarding jurisdiction and that the Michigan court had accepted jurisdiction over the parties' custody proceeding following that conversation. Even assuming that the trial court could have exercised continuing jurisdiction over its initial child custody order, the UCCJEA prioritizes "home state" jurisdiction, which was Michigan in October 2019. Under these facts, the trial court did not err in declining jurisdiction and in finding that Michigan was the more appropriate forum to address the parties' child custody matter and that it (the Ohio court) lacked exclusive subject matter jurisdiction.

**{¶ 43}** Mother's second assignment of error is overruled.

### III. Conclusion

**{¶ 44}** The trial court's judgment will be affirmed.

. . . . . . . . . . . . .

TUCKER, P.J. and HALL, J., concur.

Copies sent to:

Matthew C. Sorg
Ebony D. Davenport
James R. Kirkland
Hon. Helen Wallace