**[Cite as *In re R.B.*, 2024-Ohio-3040.]**

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

In re R.B.                                   Court of Appeals No.  L-23-1292

                                             Trial Court No.  JC23295039

                                             **<u>DECISION AND JUDGMENT</u>**

                                             Decided:    August 9, 2024

* * * * *

Laurel A. Kendall, for appellant.

* * * * *

**MAYLE, J.**

**{¶ 1}** This is an appeal of a December 8, 2023 judgment of the Lucas County

Court of Common Pleas, Juvenile Division, which adopted a magistrate's decision to

transfer legal custody of the minor child, R.B., from her mother to her maternal

grandmother.  As explained below, because mother did not object to the magistrate's

decision and fails to argue plain error on appeal, she has waived her right to challenge the juvenile court's judgment under Juv.R. 40(D)(3)(b)(iv).

## I. Background

{¶ 2} On June 9, 2023, Ky.B. filed a third-party complaint for legal custody of her granddaughter, R.B. (D.O.B. 1/02/2023). R.B.'s mother, Ka.B. ("mother"), is Ky.B.'s daughter, and is still a minor herself. According to the complaint, grandmother filed for custody due to mother's alleged "negligence, violence and suicidal ideations."

{¶ 3} Following a hearing on July 20, 2023, the court granted temporary custody over R.B. to grandmother. The order indicates that mother, who did not attend the hearing, was "currently a runaway" with a warrant for her arrest "on a pending felony case."

{¶ 4} Pursuant to Juv.R. 40, the matter was tried before a magistrate on November 30, 2023, with grandmother, mother, and mother's counsel in attendance. R.B.'s father, R.H. ("father"), did not participate in the proceedings even though he was served with the complaint and the notice of hearing.

{¶ 5} Grandmother appeared pro se and testified first. According to her, mother and father were neither suitable, nor fit, to raise R.B. She testified that father has "never" had contact with R.B., and that mother is "mentally and physically unstable" and makes "irrational decisions at the spur of the moment."

2.

{¶ 6} Grandmother testified that she was seeking custody of R.B. because, at the time of hearing, mother was pregnant by a different man, and that she and the father of the expectant child "argue a lot" and that their "living situation is unsafe [and] unstable."

{¶ 7} For the first three months of R.B.'s life, grandmother, mother, and R.B. lived together at grandmother's home on Vance Street in Toledo. One day, mother went to the store with R.B. and did not return. When grandmother called to ask where they were, mother told her that she "[did not] want to be at home" and that she had "[her] reasons." Grandmother responded, "if you need some air, the baby can stay [with me]. You can come home and see her, you know, as you need air. And she refused, refused, refused." About two months later, grandmother saw a video that "led [her] to go get the baby." In the video, mother was shown "arguing with [the] father" of her expectant child and "throwing salt, sugar, something white all over him, and [R.B.] was lying right next to him." Grandmother retrieved R.B. after seeing the video and has cared for her since then.

{¶ 8} A few times a month, mother visits with R.B. at grandmother's home for about two hours. Under cross-examination, grandmother testified that she and mother have "very little" contact with one another, that mother provides no diapers, formula, food, or anything else for R.B. Grandmother claimed not to know where mother lives because mother has identified three different addresses: an apartment "somewhere on the east side," a residence with an aunt on Peck Street, and "The Moody Manor."

{¶ 9} Mother testified next. She claimed to live on Peck Street with her auntie. Mother characterized grandmother's testimony as "a little accurate" but maintained that

3.

she "really want[s] [R.B.] to be with me." Mother said that she is unemployed, because she goes to school and because she has preeclampsia, which prevents her from standing on her feet "for too long." When asked how she would support R.B., mother testified that she would get "clothes from the churches" where she volunteers, and she would continue to rely upon WIC [Women, Infants, and Children] benefits. Mother testified that she talks to R.B.'s father "sometimes." According to her, father has not seen R.B. since R.B. returned to grandmother's home "because [grandmother] doesn't want [R.B.] to be around him."

{¶ 10} At the conclusion of the hearing, the magistrate stated that she intended to grant legal custody of R.B. to grandmother, and that mother and father would be entitled to visit with R.B. by agreement of the parties. The magistrate issued a written decision that same day, November 30, 2023, which the juvenile court adopted by judgment entry, filed on December 8, 2023. Through appellate counsel, mother appealed and raises a single assignment of error for our review.

**Assignment of Error I**: The trial court award of parenting time "as agreed by the parties" was not supported by the manifest weight of the evidence.

## II. Law and Analysis

{¶ 11} "Juvenile courts have jurisdiction to hear institutional custody cases (complaints filed by children services agencies alleging children to be abused, neglected or dependent children) and to hear 'private' custody or non-institutional custody disputes

4.

(which generally involve disputes between parents and non-parents or disputes between unmarried parents)." *In re Shepherd*, 1999 WL 809760, *4 (4th Dist. Sept. 29, 1999). R.C. 2151.23(A)(2) governs private custody disputes, like this one, between parents and non-parents. *In re Perales,* 52 Ohio St.2d 89, 96 (1977). Under that statute, a juvenile court has "exclusive original jurisdiction * * * to determine the custody of any child not a ward of another court of this state."

{¶ 12} In private custody cases between natural parents and non-parents, the primary consideration is the natural parent's fitness or suitability. *Reynolds v. Goll*, 75 Ohio St.3d 121 (1996); *see also, In re Hockstok*, 2002-Ohio-7208, syllabus ("a trial court must make a parental unsuitability determination on the record before awarding legal custody of the child to the nonparent."). In *In re Perales,* the Ohio Supreme Court set forth the following criteria to determine whether a natural parent is unsuitable:

> "[T]he hearing officer may not award custody to the nonparent
> without first making a finding of parental unsuitability—that is, without
> first determining that a preponderance of the evidence shows [1] that the
> parent abandoned the child, [2] that the parent contractually relinquished
> custody of the child, [3] that the parent has become totally incapable of
> supporting or caring for the child, *or* [4] that an award of custody to the
> parent would be detrimental to the child. (Emphasis added.) *Id.* at syllabus
> citing R.C. 2151.23(A)(2).

{¶ 13} "If a court concludes that any one of these circumstances describes the conduct of a parent, the parent may be adjudged unsuitable, and the state may infringe upon the fundamental parental liberty interest of child custody." *In re Hockstok* at ¶ 17. The nonparent seeking custody bears the burden of demonstrating that the parent is unsuitable. *Depinet v. Norville*, 2020-Ohio-3843, ¶ 14 (3d Dist.).

{¶ 14} Because custody issues "are some of the most difficult and agonizing decisions a trial judge must make, a trial judge must have wide latitude in considering all the evidence * * * and such a decision must not be reversed absent an abuse of discretion." (Citation omitted.) *Davis v. Flickinger*, 77 Ohio St.3d 415, 418 (1997). As applied in custody cases, that means, "[w]here an award of custody is supported by a substantial amount of credible and competent evidence, such an award will not be reversed as being against the weight of the evidence by a reviewing court. (*Trickey v. Trickey*, 158 Ohio St. 9 (1952), approved and followed.)" *Id.,* quoting *Bechtol v. Bechtol*, 49 Ohio St.3d 21 (1990), syllabus.

{¶ 15} In this case, the magistrate found, specifically as to mother, that "[m]other is a minor. She is not employed and has an active warrant for failing to appear for delinquency charges. The child has lived with [grandmother] since she was about 4 months old. [Grandmother] has been the primary care giver for the child. Mother provides no support for the child and visits sporadically for a few hours at a time." *See* Magistrate's Decision, Nov. 30, 2023. Based upon these findings, the magistrate determined that mother was unsuitable under the third and fourth *In re Perales* factors.

6.

That is, the magistrate found "[b]y a preponderance of the evidence * * * [that] Mother * * * [has] become incapable of caring for [R.B.]" *and* that "Custody to Mother * * * would be detrimental to the [child]." (Emphasis added.) *Id.* The magistrate awarded legal custody of R.B. to grandmother and awarded parenting time to mother and father "by agreement of the parties." Following an independent review of the decision, the juvenile court adopted the magistrate's decision.

{¶ 16} On appeal, mother does *not* challenge either unsuitability finding. Indeed, mother is *not* seeking reversal of trial court's grant of legal custody to grandmother. Instead, mother argues that the trial court "arguably" erred by ordering parenting time "by agreement of the parties." Mother claims that, given the lack of "cooperation" between the parties, mother is "at risk of not being allowed regular contact with the child."

{¶ 17} Mother, however, failed to object to the magistrate's decision. Under Juv.R. 40(D)(3)(b), a party may file objections to a magistrate's decision within fourteen days after the filing of the decision. Importantly, under Juv. R. 40(D)(3)(b)(iv), "[e]xcept for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Juv.R. 40(D)(3)(a)(ii), unless the party has objected to that finding or conclusion as required by Juv.R. 40(D)(3)(b)."

{¶ 18} Mother did not object to the magistrate's decision. "The failure to make a timely and specific objection to a magistrate's [decision], as required under the rule,

7.

results in a waiver of claimed error by the trial court in adopting a magistrate's findings of fact or conclusions of law." *Foos v. Foos,* 2009-Ohio-3398, ¶ 16 (6th Dist.), citing *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 122 (1997) (The "failure to follow procedural rules can result in forfeiture of rights."); *see also Felter v. Felter*, 2017-Ohio-1075, ¶ 14 (6th Dist.) ("At the outset, we note that appellant did not timely object to the magistrate's decision. Therefore, she has waived all but plain error on appeal. *See* Civ.R. 53(D)(3)(b)(iv)."); *In re S.A.,* 2013-Ohio-3047, ¶ 18 (2d Dist.) ("Mother failed to object to the magistrate's decision regarding the denial of her motion for continuance * * * as required by Juv.R. 40(D)(3)(b)(iv). * * * Absent a showing of plain error, Mother's argument has been waived for purposes of appeal since she failed to object below."); *In re C.B.,* 2011-Ohio-4537, ¶ 9 (2d Dist.) (Where mother failed to file objections to a combined magistrate's decision and judge's order of legal custody and protective supervision, mother's arguments were waived for purposes of appeal, in the absence of any evidence of plain error).

{¶ 19} Here, mother did not object to the magistrate decision, that mother's visitation would be scheduled "by agreement of the parties," and she has not argued plain error on appeal. She has, therefore, failed to preserve the issue for appellate review. Consequently, we do not reach the merits of her argument, and mother's assignment of error is overruled. *Accord, In re M.C.,* 2015-Ohio-1627, ¶ 28 (9th Dist.).

8.

{¶ 20} The judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed. Mother is ordered to pay the court costs of this appeal pursuant to App. R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Christine E. Mayle, J.                              _____
                                                                              JUDGE
Gene A. Zmuda, J.
                                                                _____
Myron C. Duhart, J.                                       JUDGE
CONCUR.

                                                                _____
                                                                              JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.