[Cite as *In re K.M.H.*, 2026-Ohio-1214.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | |
|---|---|
| IN RE: K.M.H. AND D.J.L.H. | : |
| | :     C.A. No. 30680 |
| | : |
| | :     Trial Court Case Nos. G-2019-004439- |
| | :     0B,0M,0O,0S,0Q,0Y; G-2015-005688- |
| | :     0C,0O,0P |
| | : |
| | :     (Appeal from Common Pleas Court- |
| | :     Juvenile Division) |
| | : |
| | :     **FINAL JUDGMENT ENTRY &** |
| |     **OPINION** |

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on April 3, 2026, the judgment of the trial court is affirmed.

Costs to be paid as stated in App.R. 24.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately serve notice of this judgment upon all parties and make a note in the docket of the service. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.

For the court,

*Christopher B. Epley*

_____
CHRISTOPHER B. EPLEY, JUDGE

LEWIS, P.J., and HUFFMAN, J., concur.

R.R., Appellant, Pro Se
JULIA C. KOLBER, Attorney for Appellees

EPLEY, J.

{¶ 1} Mother appeals from a judgment of the Montgomery County Court of Common Pleas, Juvenile Division, which granted legal custody of her two children, K.M.H. and D.J.L.H., to Maternal Grandparents. For the following reasons, the trial court's judgment is affirmed.

## I. Facts and Procedural History

{¶ 2} Mother is the biological parent of D.J.L.H, born in March 2010, and K.M.H., born in September 2013. Mother has at least one other child, who is not involved in this appeal.

{¶ 3} Mother and D.J.L.H.'s father married in June 2009 and divorced in Hamilton County in 2011. In the divorce decree, Mother was designated as the residential parent for D.J.L.H.

{¶ 4} Mother and K.M.H.'s father married in Dayton in October 2012. In September 2015, while the two were still married, an administrative support order was filed in the trial court ordering K.M.H.'s father to provide child support to Mother. When Mother and K.M.H.'s father's marriage ended in May 2018, the decree of dissolution provided that Mother would be their child's residential parent and that she would receive child support from K.M.H.'s father. Soon after, the trial court terminated its support order.

{¶ 5} Despite the custody orders, it appears that the children spent significant periods of time with Maternal Grandmother and her husband ("Maternal Grandparents"). D.J.L.H. lived with Maternal Grandparents at various times, beginning when he was an infant.

2

Maternal Grandmother contacted children services agencies about the children multiple times over the years; all but one of the cases were closed as unsubstantiated. Maternal Grandparents' concerns about the children increased after Mother became involved with her current husband, with whom she had a child in 2018 and married in March 2020. At some point, Maternal Grandparents pursued custody of D.J.L.H. in Hamilton County, but the record of that case is not part of this record and we cannot take judicial notice of it, as it is not publicly available.

{¶ 6} On September 19, 2019, Maternal Grandmother filed motions for visitation with K.M.H. and D.J.L.H. in the trial court (the motion as to K.M.H. was filed under the same case number as the prior administrative support order). After a hearing in January 2020, the trial court granted the motions.

{¶ 7} Mother moved with her husband and children to Franklin County in June 2020. Maternal Grandparents sought custody of the children through the juvenile court there, but the case was dismissed. The record of that case is not before us.

{¶ 8} Maternal Grandparents then filed a motion for change of custody in Montgomery County in March 2021 as to D.J.L.H. and in April 2021 as to K.M.H. In May 2021, K.M.H.'s father moved for modification of his parenting time. A couple of months later, Mother moved to terminate Maternal Grandparents' visitation. After a pretrial conference on August 4, 2021, the trial court granted interim temporary custody of the children to Maternal Grandparents.

{¶ 9} The trial court conducted an evidentiary hearing on the motions on October 14, 2021, during which Mother, Maternal Grandmother, both children's fathers, Mother's husband and his parents, D.J.L.J.'s paternal grandmother, and D.J.L.H.'s father's employer testified. Prior to the hearing, the guardian ad litem filed a report recommending that legal

custody of the children be given to Maternal Grandparents. The day before the hearing, the court conducted an in-camera interview with the children.

{¶ 10} The magistrate did not issue a timely decision on the pending motions. For various reasons, Mother, Maternal Grandparents, and D.J.L.H.'s father all sought modifications of the temporary orders in 2022 and/or 2023.

{¶ 11} On January 25, 2024, the magistrate issued a decision which granted legal custody of K.M.H. and D.J.L.H. to Maternal Grandparents and ruled on other pending motions. Of relevance here, the magistrate found that awarding custody of the children to any of their parents would be detrimental to the children and that legal custody to Maternal Grandparents was in the children's best interest. Mother, K.M.H.'s father, and Maternal Grandparents timely objected to the magistrate's decision. The grandparents' objection was directed toward a ruling regarding parenting time by D.J.L.H.'s father, and they later withdrew their objection.

{¶ 12} On August 22, 2025, the trial court issued an order, noting that the hearing on the legal custody motions had occurred in October 2021 and finding that, due to the passage of time, an issue existed as to whether the parties wished to continue pursuing their objections. The trial court ordered the magistrate to "set a status review hearing with the parties in order to take additional testimony and/or determine if the parties wish to pursue their objection." The magistrate held a status review hearing on October 15, 2025, and took additional testimony. The record does not include a transcript of the hearing.

{¶ 13} The same day as the hearing, Mother filed motions to dismiss and to sever the action as to D.J.L.H. She asserted that Maternal Grandmother had previously raised the same claims, unsuccessfully, in Franklin County.

4

{¶ 14} On October 30, 2025, the trial court issued a new magistrate's decision, indicating that Mother and D.J.L.H.'s father still wished to pursue their objections and providing updated findings about how the children were doing and the extent of their parents' contacts with them. The magistrate again determined that awarding custody of either child to the child's parents would be detrimental to the child and that granting legal custody of the children to Maternal Grandparents was in the children's best interest. The trial court immediately adopted the new magistrate's decision; the decision included a notification that the parties had 14 days in which to object. No party objected to the October 30, 2025 magistrate's decision.

{¶ 15} Mother appeals from the trial court's October 30, 2025 judgment. She challenges the trial court's jurisdiction and raises several arguments under the umbrella of due process.

## II. Jurisdiction

{¶ 16} In her first assignment of error, Mother claims that the trial court lacked subject-matter jurisdiction to issue the custody order. She asserts that jurisdiction resided in Franklin County under R.C. Ch. 3127, the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA).

{¶ 17} "Subject-matter jurisdiction refers to the constitutional or statutory power of a court to adjudicate a particular class or type of case." *Corder v. Ohio Edison Co.*, 2020-Ohio-5220, ¶ 14. "A court's subject-matter jurisdiction is determined without regard to the rights of the individual parties involved in a particular case." *Bank of Am., N.A. v. Kuchta*, 2014-Ohio-4275, ¶ 18, citing *Pratts v. Hurley*, 2004-Ohio-1980, ¶ 19. Instead, "the focus is on whether the forum itself is competent to hear the controversy." *State v. Harper*, 2020-Ohio-2913, ¶ 23.

5

{¶ 18} Ohio's courts of common pleas and their divisions have "original jurisdiction over all justiciable matters . . . as may be provided by law." Ohio Const., art. IV, § 4(B). Juvenile courts are statutory courts with limited jurisdiction, and they can exercise only the authority conferred upon them by the Ohio legislature. *In re Z.R.*, 2015-Ohio-3306, ¶ 14. Under R.C. 2151.23(A)(2), the juvenile court has exclusive jurisdiction to determine the custody of "any child not a ward of another court of this state." That statute governs private custody disputes between parents and non-parents. *In re R.B.*, 2024-Ohio-3040, ¶ 11 (6th Dist.) (juvenile court had jurisdiction over custody dispute between mother and grandmother). Where custody of a child has been decided in a prior divorce decree, the juvenile court has concurrent jurisdiction with the domestic relations court to determine custody. *In re Poling*, 64 Ohio St.3d 211, 215 (1992); *In re D.D.*, 2017-Ohio-8392, ¶ 10 (7th Dist.).

{¶ 19} The question of which Ohio county should resolve a custody dispute is a matter of venue. "Venue is a 'procedural matter,' and it refers not to the power to hear a case but to the geographic location where a given case should be heard." *In re Z.R.* at ¶ 16. Generally, "the nature of the juvenile courts does not transform venue into a jurisdictional prerequisite." *Id*. at ¶ 17. Instead, defects in venue in juvenile court proceedings are generally able to be corrected using Juv.R. 11, which governs the transfer of cases to another county. *Id*. at ¶ 24.

{¶ 20} Mother cites UCCJEA to support her argument that the trial lacked jurisdiction. However, "[t]he purpose of the UCCJEA is to help resolve *interstate* custody disputes and to avoid jurisdictional competition with courts of other jurisdictions in custody matters." (Emphasis added.) *Lafi v. Lafi*, 2008-Ohio-1871, ¶ 9 (2d Dist.), citing *State ex rel. Morenz v. Kerr*, 2004-Ohio-6208, ¶ 16. R.C. 3127.15 establishes four circumstances in which an Ohio

6

court, as opposed to a court of another state, has jurisdiction to make an initial custody determination. One circumstance is when Ohio is the "home state" of the child when the action is commenced. R.C. 3127.15(A)(1); *In re M.R.F.-C.*, 2020-Ohio-4400, ¶ 34 (2d Dist.). "[A]n Ohio court loses its exclusive jurisdiction once the parents and child no longer 'presently reside' in Ohio." *In re M.R.F.-C.* at ¶ 35 (interpreting R.C. 3127.16).

{¶ 21} Mother indicates that she and her children relocated to Franklin County on June 17, 2020, prior to the filing of Maternal Grandparents' petitions for change of custody. She contends that the motions should have proceeded in Franklin County and that Montgomery County lacked jurisdiction to address them. Mother does not suggest that she and the children resided outside of Ohio when the custody actions were commenced. Because Mother and the children have moved within Ohio, the UCCJEA is inapplicable to this case.

{¶ 22} The trial court had subject-matter jurisdiction over the custody proceedings. Accordingly, Mother's first assignment of error is overruled.

### III. Final Appealable Order

{¶ 23} Before we turn to Mother's second assignment of error, we must address Maternal Grandparents' assertion that the judgment from which Mother has appealed is not a final appealable order. We begin with a discussion of Juv.R. 40, which governs juvenile court proceedings before a magistrate.

{¶ 24} Under Juv.R. 40, juvenile courts may refer a particular case or matter to a magistrate. The reference may be broad or limited to specific issues or tasks, such as "directing the magistrate to receive and report evidence only." Juv.R. 40(D)(1)(b).

{¶ 25} In general, a magistrate must issue a written decision on any referred matter. Juv.R. 40(D)(3)(a)(i) and (iii). "A magistrate's decision is not effective unless adopted by

7

the court." Juv.R. 40(D)(4)(a). The juvenile court that adopts, rejects, or modifies a magistrate's decision must also enter its own judgment. Juv.R. 40(D)(4)(e).

{¶ 26} A party may file written objections to a magistrate's decision within 14 days of the filing of the decision. Juv.R. 40(D)(3)(b)(i). The trial court may enter a judgment either during that 14-day period or after it has expired. Juv.R. 40(D)(4)(e)(i). If the court enters a judgment during the 14-day period for the filing of objections, the timely filing of objections to the magistrate's decision operates as an automatic stay of execution of the judgment until the juvenile court disposes of those objections and vacates, modifies, or adheres to the judgment previously entered. *Id*.

{¶ 27} "If no timely objections are filed, the court may adopt a magistrate's decision, unless it determines that there is an error of law or other defect evident on the face of the magistrate's decision." Juv.R 40(D)(4)(c). If timely objections are filed, the juvenile court must rule on the objections after an independent review. Juv.R. 40(D)(4)(d). The juvenile court may hear additional evidence before ruling on the objections. *Id*.

{¶ 28} Regardless of whether objections are filed, the juvenile court may hear a previously-referred matter, take additional evidence, or return a matter to a magistrate. Juv.R. 40(D)(4)(b).

{¶ 29} In this case, the magistrate held a hearing on Maternal Grandparents' motions for change of custody on October 14, 2021. More than two years later, on January 25, 2024, the magistrate issued a decision granting both motions for change of custody, and the trial court immediately adopted the magistrate's decision. Mother, D.J.L.H.'s father, and Maternal Grandparents objected to the magistrate's decision.

{¶ 30} Before ruling on the objections, the trial court returned the matter to the magistrate to "set a status review hearing with the parties in order to take additional

8

testimony and/or determine if the parties wish to pursue their objections." The magistrate held the status conference and took additional evidence on October 15, 2025. Given the language of the trial court's instruction to the magistrate, it is unclear whether the trial court intended the magistrate to render a new decision on the motions for change of custody.

{¶ 31} Regardless, the magistrate's subsequent October 30, 2025 decision reconsidered the merits of the custody (and other) motions. The magistrate provided updated findings of fact and conclusions of law and again granted legal custody to Maternal Grandparents. The trial court immediately adopted the new magistrate's decision, and it informed the parties of their opportunity to object to that decision. When no objections were timely filed, the October 30, 2025 judgment became a final appealable order.

{¶ 32} Although Juv.R. 40(D)(4)(d) requires a trial court to rule on objections to a magistrate's decision, we conclude that the objections to the original January 25, 2024 magistrate's decision had no legal effect after the January 25, 2024 magistrate's decision was supplanted by the October 30, 2025 magistrate's decision. Indeed, it makes little sense for a trial court to "undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law," as required by Juv.R. 40(D)(4)(d), when the decision that was subject to objections has been reconsidered and replaced with a new magistrate's decision. Here, the outcome following the October 15, 2025 hearing was the same; however, with different evidence, the magistrate might have reached a different conclusion on reconsideration.

{¶ 33} Maternal Grandparents argue that the October 30, 2025 decision was "simply a decision from a status review hearing held at the request of the Judge in conjunction with the decision in the process on the Appellant's (and Father of DH's) objections to the actual custody decision from January 2024." They assert that the trial court rendered a final

9

appealable order on November 21, 2025, when it ruled on the objections to the January 25, 2024 magistrate's decision and granted legal custody of the children to Maternal Grandparents.

{¶ 34} We are unpersuaded that the October 30, 2025 decision was not final merely because it stemmed from a status review hearing at the request of the trial court. In determining the finality of the October 30, 2025 decision, we must focus on the nature of the magistrate's ruling and the trial court's action on that ruling, not what might have been intended when the matter was returned to the magistrate. In this case, the magistrate reconsidered the merits of the motions with new evidence and issued a new magistrate's decision, which was rendered final by the trial court's adoption of the decision and the parties' lack of objections.

### IV. Award of Legal Custody to Maternal Grandparents

{¶ 35} In her second assignment of error, Mother contends that the trial court violated her right to due process, failed to make a required finding of parental unfitness, and disregarded material evidence when it awarded legal custody of her children to Maternal Grandparents.

{¶ 36} Our review of Mother's arguments is limited by her failure to file objections to the magistrate's October 30, 2025 decision and the absence of a transcript of the October 15, 2025 hearing. Except for a claim of plain error, a party may not assign as error on appeal the court's adoption of any factual finding or legal conclusion unless the party has objected to that finding or conclusion as required by Juv.R. 40(D)(3)(b). Juv.R. 40(D)(3)(b)(iv). "In appeals of civil cases, the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error . . . seriously affects the basic fairness, integrity, or public reputation of the judicial

10

process, thereby challenging the legitimacy of the underlying judicial process itself." *Goldfuss v. Davidson*, 79 Ohio St.3d 116 (1997), syllabus; *see In re N.R.*, 2025-Ohio-2896, ¶ 54.

{¶ 37} We summarily reject several of Mother's claims. First, nothing in the record supports Mother's assertion that either the magistrate or the trial court was biased against her. Mother asserts that she was not given notice and an opportunity to be heard, but she received notice of the hearings on motions for change of custody and appeared at both. Mother also argues that the trial court failed to make sufficient findings to allow appellate review. However, "a magistrate's decision may be general unless findings of fact and conclusions of law are timely requested by a party or otherwise required by law." Juv.R. 40(D)(3)(a)(ii). Here, the magistrate made several factual findings, and Mother did not request additional findings. Mother further contends that the trial court ignored material evidence. But without objections and a transcript of the October 15, 2025 hearing, we cannot review the trial court's factual findings.

{¶ 38} Mother's primary argument appears to be that the trial court applied the wrong legal standard when it granted legal custody of her children to Maternal Grandparents. She states that the magistrate conducted a best-interest analysis without first determining parental fitness.

{¶ 39} In a custody proceeding between a parent and a nonparent, the court "may not award custody to the nonparent without first making a finding of parental unsuitability." *In re Perales*, 52 Ohio St.2d 89 (1977), syllabus. To find unsuitability, the court must determine by a preponderance of the evidence that (1) the parent abandoned the child, (2) the parent contractually relinquished custody of the child, (3) the parent has become

11

totally incapable of supporting or caring for the child, or (4) an award of custody to the parent would be detrimental to the child. *Id*.

{¶ 40} In determining whether custody to the parent would be detrimental to the child, the question is whether the parent is unsuitable as a custodian, not whether someone else is more suitable. *In re R.D.B.*, 2019-Ohio-1547, ¶ 20. Unsuitability turns solely on whether granting legal custody to the parent would have a harmful effect on the child. *In re I.R.*, 2019-Ohio-2037, ¶ 14 (2d Dist.). A nonparent seeking legal custody bears the burden to establish the parent's unsuitability. *Id.* at ¶ 9.

{¶ 41} In his October 30, 2025 decision, the magistrate indicated that he had reviewed the evidence and testimony from the October 14, 2021 and October 15, 2025 hearings, and that he still found it to be in the children's best interest to grant legal custody to Maternal Grandparents. The magistrate then specifically found that "[a] preponderance of the evidence indicates that an award of custody of either child to their Mother would be detrimental to the child[.]" The magistrate similarly found that an award of custody to the children's respective fathers would also be detrimental to them. The magistrate then stated that he had considered the best interest factors in R.C. 3109.04(F)(1) and R.C. 2151.414(D)(1), and he made specific findings as to the wishes of the parents, the interactions of the children with all the parties involved, the wishes of the children as expressed in an in-camera interview, and the guardian ad litem's recommendation.

{¶ 42} With the record before us, the trial court did not commit plain error when it granted legal custody of K.M.H. and D.J.L.H. to Maternal Grandparents. Mother's second assignment of error is overruled.

### V. Conclusion

{¶ 43} The trial court's judgment is affirmed.

. . . . . . . . . . . . .

LEWIS, P.J., and HUFFMAN, J., concur.